# IN THE SUPREME COURT OF TEXAS

════════════
No. 16-0671
════════════

IN RE XEROX CORPORATION AND XEROX STATE HEALTHCARE, LLC
F/K/A ACS STATE HEALTHCARE, RELATORS

════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
════════════════════════════════════════

**Argued December 6, 2017**

JUSTICE GUZMAN delivered the opinion of the Court.

JUSTICE BOYD and JUSTICE BLACKLOCK did not participate in the decision.

In this mandamus proceeding, we consider whether the proportionate-responsibility scheme in Chapter 33 of the Texas Civil Practice and Remedies Code[1] applies to a civil-remedy action under the Texas Medicaid Fraud Prevention Act (TMFPA).[2] The trial court held Chapter 33 inapplicable, struck the relators' third-party petition seeking contribution under Chapter 33, and denied the relators' motion to designate responsible third parties.[3] The court of appeals denied mandamus relief,[4] as do we. Chapter 33 does not apply to a TMFPA action because (1) the statutory remedy does not constitute "damages" subject to apportionment under Chapter 33 and (2) an irreconcilable

---

[1] TEX. CIV. PRAC. & REM. CODE §§ 33.001-.017.

[2] TEX. HUM. RES. CODE §§ 36.001-.132.

[3] TEX. CIV. PRAC. & REM. CODE §§ 33.004, .011-.017.

[4] ___ S.W.3d ___, 2016 WL 768134, at *2 (Tex. App.—Austin 2016, orig. proceeding).

conflict exists between the proportionate-responsibility statute and the TMFPA's mitigation and fault-allocation scheme.

## I. Background

For nearly a decade, Xerox Corporation and Xerox State HealthCare, LLC, f/k/a ACS State HealthCare, LLC (collectively, Xerox) administered the Texas Medicaid program under contracts with the Texas Health and Human Services Commission and its predecessors. As claims processor, Xerox's duties included (1) reviewing documents and patient information submitted with prior-authorization requests for orthodontic services and (2) approving or denying the requests in accordance with Medicaid policy.[5]

The State of Texas asserts Xerox fraudulently operated the review process while serving as the Medicaid program administrator. Among other complaints, the State alleges Xerox misrepresented, concealed, or failed to disclose that it was not processing orthodontic prior-authorization requests in accordance with Medicaid policy, was not substantively reviewing the evaluative documentation, and was approving vast numbers of prior-authorization requests for ineligible services. The State claims that rather than conducting a rigorous review, Xerox actively concealed the fact that unqualified and inadequately supervised clerical employees routinely "rubber stamped" orthodontic prior-authorization requests. According to the State, Xerox's actions were

---

[5] *See* 25 TEX. ADMIN. CODE § 33.71(a) (requiring prior authorization for Medicaid to cover costs of orthodontic treatment). Medicaid covers orthodontic treatment only to treat "severe handicapping malocclusion and other related conditions" that are described and measured by standards published in the Texas Medicaid Provider Procedures Manual. *Id.* "Orthodontic services for cosmetic reasons only are not a covered Medicaid service." *Id.* Other medical services may be covered when "medically necessary." *Id.* §§ .20(d)(3), 33.2(8), .40(b).

2

unlawful, compromised the Medicaid program's integrity, and directly or indirectly caused the State to pay millions of dollars for unauthorized orthodontic services to Medicaid patients.

Medicaid fraud may be redressed in criminal, administrative, or civil proceedings.[6] The State sued Xerox for a civil remedy under the Texas Medicaid Fraud Prevention Act (TMFPA or the Act).[7] As authorized by the Act, the State seeks treble the amount of any Medicaid payment made as a result of an unlawful act; civil penalties of not less than $5,500 per unlawful act; interest on the amount of unlawfully procured payments; and expenses, costs, and attorney's fees.[8] The State also filed administrative actions against various orthodontic service providers, but later dismissed those proceedings in favor of pursuing TMFPA remedies against those providers in separate civil actions.

Xerox filed a general denial and, through various procedural devices, sought to unite the separate TMFPA proceedings for purposes of shifting liability, if any, to the service providers who had directly received disputed Medicaid payments. The State vigorously opposed all efforts to bring the Medicaid service providers into the Xerox litigation, and the trial court ruled in the State's favor across the board. The court (1) granted the State's motion to strike Xerox's third-party petition, which sought contribution from twenty-seven Medicaid service providers under the

---

[6] *See* TEX. HUM. RES. CODE §§ 32.039-.0391, 36.001-.117; TEX. PENAL CODE § 35A.02(a); 1 TEX. ADMIN. CODE §§ 371.1601–.1719.

[7] *See* TEX. HUM. RES. CODE §§ 36.001–.132.

[8] *Id.* §§ 36.007 (authorizing the attorney general to "recover fees, expenses, and costs reasonably incurred in obtaining injunctive relief or civil remedies or in conducting investigations" including "court costs, reasonable attorney's fees, witness fees, and deposition fees"), .052 (delineating fixed and variable civil remedies for Medicaid fraud).

3

comparative-fault regime in Chapter 33;[9] (2) denied Xerox's motion to designate nearly seventy

Medicaid service providers as responsible third parties under Chapter 33;[10] (3) twice refused Xerox's

request to consolidate this proceeding with the State's TMFPA actions against the service providers

(except as to depositions); and (4) struck petitions in intervention filed by a group of service

providers.

The trial court issued letter rulings explaining that Chapter 33 is inapplicable to a TMFPA

action because a state enforcement action is not a statutory tort subject to Chapter 33 and "the civil

remedy in the TMFPA is not a damage provision" subject to apportionment based on comparative

fault. The court said the TMFPA plainly holds each fraudster liable for a civil remedy and penalty

that cannot be diminished or reduced by the civil remedy and penalty assessed against or paid by

another bad actor: "There is no comparative fault, joint-and-several liability, contribution,

single-satisfaction, or settlement credit in a TMFPA action." The trial court declined to consolidate

the proceedings, both as an exercise of its discretion and because "[t]he State is entitled to pursue

a Medicaid Fraud claim against a defendant to the exclusion of all other parties."

After the trial court denied Xerox's request for a permissive interlocutory appeal,[11] Xerox

sought mandamus relief from the trial court's orders striking Xerox's third-party petition and

denying leave to designate responsible third parties under Chapter 33. The court of appeals denied

---

[9] *See* TEX. CIV. PRAC. & REM. CODE §§ 33.001–.017 (party to a tort suit may recover from "a defendant, settling person, or responsible third party" who "is found responsible for a percentage of the harm for which relief is sought"); *see also* TEX. R. CIV. P. 38(a) (governing third-party practice).

[10] *See* TEX. CIV. PRAC. & REM. CODE § 33.011(6).

[11] *See id.* § 51.014(d); TEX. R. APP. P. 28.3.

4

mandamus relief without substantive analysis.[12]  However, in an interlocutory appeal involving

certain Medicaid service providers and a different legal issue, which we consider today in *Nazari

v. State*,[13] the court of appeals concurred with the trial court's substantive rulings in this case,

holding the TMFPA's civil-remedy provision is a penalty statute, not a damages provision.[14]

After Xerox filed its mandamus petition in this Court, we temporarily abated the case to

allow a successor trial-court judge to reconsider the rulings at issue.[15]  The successor judge adopted

the prior rulings.

## II. Discussion

As in the courts below, the issue presented is whether Chapter 33's

proportionate-responsibility scheme encompasses a civil-remedy action under the TMFPA.  This

is a question of legislative intent, which we determine as a matter of law using well-established

interpretive principles to construe the statutory language.[16]  We thus begin by examining the two

statutes at issue.  Mandamus will not issue absent a clear abuse of discretion for which an adequate

appellate remedy is lacking.[17]

---

[12] ___ S.W.3d ___, 2016 WL 768134, at *2 (Tex. App.—Austin 2016, orig. proceeding).

[13] 497 S.W.3d 169 (Tex. App.—Austin 2016), *affirmed* ___ S.W.3d ___ (Tex. 2018) (cause number 16-0549 in this Court).

[14] *Id.* at 178, 181.

[15] *See* TEX. R. APP. P. 7.2(b).

[16] *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 75 (Tex. 2011).

[17] *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding).

**A. Chapter 33: Proportionate Responsibility**

Chapter 33 provides a framework for apportioning damages among tortfeasors responsible for "causing or contributing to cause in any way the harm for which recovery of damages is sought."[18] The statute applies to deceptive-trade-practice actions, "any cause of action based on tort," and "any other conduct that violates an applicable legal standard."[19] We have also applied Chapter 33 to statutory torts, but have declined to do so when the enabling statute contains a separate and conflicting fault-allocation scheme.[20]

By express carve-out, Chapter 33 is inapplicable to exemplary-damages claims, actions to collect workers' compensation benefits, and claims for damages arising from the manufacture of methamphetamine.[21] TMFPA actions are not expressly included in or exempted from Chapter 33.

Chapter 33 embodies the fundamental tort-law principle that liability generally arises only from one's own injury-causing conduct and, as a result, liability for damages is commensurate with fault.[22] Chapter 33's proportionate-responsibility scheme also incorporates the one-satisfaction

---

[18] TEX. CIV. PRAC. & REM. CODE § 33.003(a).

[19] *Id.* § 33.002, .003(a).

[20] *Compare Dugger v. Arredondo*, 408 S.W.3d 825, 827 (Tex. 2013) (applying Chapter 33 to claims under the wrongful-death statute), *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 702 (Tex. 2008) (holding Chapter 33 applies to a claim for breach of implied warranty under Article 2 of the Texas Uniform Commercial Code), *and F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 682 (Tex. 2007) (applying Chapter 33 to the Dram Shop Act), *with Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 110-11 (Tex. 2004) (holding the proportionate-responsibility statute is inapplicable to conversion claims under Article 3 of the Uniform Commercial Code which adopts its own comparative-responsibility scheme that is comprehensive, uniform with other jurisdictions, and more specific than Chapter 33).

[21] TEX. CIV. PRAC. & REM. CODE § 33.002(c).

[22] *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 478, 505 (Tex. 2010). Exceptions do exist, however, including vicarious liability, in which one may be legally responsible for the wrongful conduct of another based on the existence of a special relationship.

6

rule–a tort concept that limits a plaintiff to only one recovery for any damages suffered because of an injury.[23] This rule provides that when a claimant seeks recovery for the same injury from multiple parties, the claimant is entitled to only one recovery on that injury.[24]

Consistent with the one-satisfaction rule and legislative intent "to hold each person responsible for [the person's] own conduct causing injury,"[25] Chapter 33 requires the trier of fact to determine the percentage of responsibility of each claimant, defendant, settling person, and any responsible third party who has been designated in compliance with the statute.[26] Damages are thereafter apportioned according to those comparative-fault findings.[27]

In some circumstances, however, ratable apportionment yields to other legislative policies. Subject to a right of contribution,[28] comparative-fault apportionment is eliminated when a defendant is found more than fifty-percent responsible for the harm[29] and when certain crimes are perpetrated with "specific intent to do harm."[30] In addition, a claimant who is more than fifty-percent

---

[23] *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000).

[24] *Id.*; *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991).

[25] *Hinton*, 329 S.W.3d at 505 (internal quotation marks omitted, alteration in original).

[26] *See* TEX. CIV. PRAC. & REM. CODE §§ 33.003 (determining percentage of responsibility), .004 (adopting procedure for designating responsible third party), .011 (defining "claimant," "defendant," "liable defendant," "settling person," "responsible third party," and "percentage of responsibility").

[27] *See id.* §§ 33.012 (allocating damages based on comparative fault), .013 (determining amount of liability and adopting joint-and-several liability in specified circumstances), .015 (authorizing a contribution action).

[28] *Id.* § 33.015.

[29] *Id.* § 33.013(b)(1).

[30] *Id.* § 33.013(b)(2), (e).

7

responsible is statutorily barred from recovering any damages.[31] Chapter 33 does not include TMFPA liability among those the Legislature expressly excepted from ratable apportionment.

Xerox, supported by amici Pharmaceutical Research and Manufacturers of America, argues a TMFPA action plainly falls within Chapter 33's scope and is not expressly or impliedly excluded. As Xerox sees it, the TMFPA is a statutory tort based on fraud for the recovery of damages—at least as to some of the civil remedies authorized in the Act—and Chapter 33 must apply to prevent the State from seeking damages for the same injury from multiple tortfeasors.

In the State's view, the TMFPA is a civil-enforcement statute for civil penalties, not a statutory tort for damages. Separate violations of the statute, the State says, produce separate injuries, rather than a unitary injury that must be apportioned among multiple violators. Following the State's argument, a TMFPA action need not be expressly exempted from Chapter 33 because the comparative-fault statute is inapplicable by its own terms. In the alternative, the State argues Chapter 33 conflicts with the TMFPA's unique method of punishing those who violate the statute and rewarding those violators who self-report and help root out systemic fraud.

Resolution of this dispute turns on the Legislature's intent in enacting the TMFPA, an inquiry that always begins—and often ends—with the statute's language.[32]

---

[31] *Id.* § 33.001.

[32] *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) ("When construing a statute, our chief objective is effectuating the Legislature's intent, and ordinarily, the truest manifestation of what lawmakers intended is what they enacted."); *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 653 (Tex. 2013) (in matters of statutory construction we "begin (and often end) with the Legislature's chosen language").

**B. The Texas Medicaid Fraud Prevention Act**:  **Civil Remedy**

In conjunction with the federal government, the Texas Medicaid program provides medical coverage to eligible Texans in need.[33] As with all government-funded programs, Medicaid resources are limited, which means fraud, abuse, and waste divert funds that could otherwise be used to provide essential health-care services.  But fiscal impact is not the only concern.  When services are provided improperly or unnecessarily, Medicaid patients are imperiled.[34]  The Medicaid system's size and complexity, the limited time and financial resources of governmental regulators, and the increasing sophistication of Medicaid scams make chicanery difficult to uncover.[35]  In recent years, reports about allegedly fraudulent dental and orthodontic schemes have been front-page news in Texas, and the State has stepped up efforts to deter, detect, and punish Medicaid fraud.[36]

Similar to the federal False Claims Act[37] and the Social Security Act's Civil Monetary Penalties Law,[38] the Texas Medicaid Fraud Prevention Act is a powerful tool for targeting fraud against the Texas Medicaid program and securing the program's integrity.[39]  The statute imbues the

---

[33] *See* TEX. HUM. RES. CODE §§ 32.001-.256; *id.* § 32.001 ("The purpose of this chapter is to enable the state to provide medical assistance on behalf of needy individuals and to enable the state to obtain all benefits for those persons authorized under the Social Security Act or any other federal act.").

[34] *See, e.g.*, Megan Comlossy, *Fighting Medicaid Fraud: States are Sniffing Out Medicaid Swindlers and Saving A Lot of Money*, ST. LEGISLATURES MAG., Apr. 2013, http://www.ncsl.org/research/health/fighting-medicaid-fraud-sl-magazine.aspx.

[35] *Id.*

[36] *See id.*

[37] 31 U.S.C. §§ 3729-33.

[38] 42 U.S.C. § 1320a-7a.

[39] TEX. HUM. RES. CODE §§ 36.001-.132; *see also* Act of May 25, 1995, 74th Leg., R.S., ch. 824, § 1, 1995 Tex. Gen. Laws 4202 (describing the act as "relating to the prevention of Medicaid fraud; imposing civil penalties").

attorney general with broad investigative and enforcement authority and—via *qui tam* provisions—deputizes private citizens to pursue a TMFPA action on the government's behalf.[40] In addition to substantial monetary consequences for fraud on the system, the TMFPA authorizes onerous administrative sanctions, including mandatory suspension or revocation of a license, permit, certification, or state-provider agreement and exclusion from the Medicaid program for at least ten years.[41]

But the issue in this mandamus proceeding concerns the money judgment the State seeks to recover under the TMFPA's civil-remedy provision in Section 36.052, the construction of which is at the heart of this dispute. Under the TMFPA, commission of an "unlawful act," as defined in Section 36.002,[42] results in monetary liability in various measures set out in Section 36.052(a):

(a) Except as provided by [the mitigation provision in] Subsection (c), a person who commits an unlawful act is liable to the state for:

(1) the amount of any payment or the value of any monetary or in-kind benefit provided under the Medicaid program, directly or indirectly, as a result of the unlawful act, including any payment made to a third party;

(2) interest on the amount of the payment or the value of the benefit described by Subdivision (1) at the prejudgment interest rate in effect on the day the payment or benefit was received or paid [accruing from that day until] the state recovers the amount of the payment or value of the benefit;

(3) a civil penalty of . . . not less than $5,500 . . . and [up to $15,000 depending on the circumstances] for each unlawful act . . . ; and

---

[40] TEX. HUM. RES. CODE §§ 36.051-.055, .101.

[41] *Id.* § 36.005.

[42] Section 36.002 provides a laundry list of conduct that is unlawful if engaged in "knowingly," meaning with knowledge of the information, conscious indifference to truth or falsity of the information, or reckless disregard of truth or falsity. *Id.* §§ 36.002, .0011.

10

(4) two times the amount of the payment or the value of the benefit described by Subdivision (1).[43]

In setting the amount of the variable penalty described in subsection (a)(3), the statute prescribes several factors to consider, including prior violations, the seriousness of the offense, health-and-safety impacts, and the need for effective deterrence.[44]

When multiple violations are aggregated, the potential financial exposure under Section 36.052(a) could be staggering. Adding to the monetary liability under Section 36.052(a), the Act authorizes the State to recover reasonable investigation and litigation fees, expenses, and costs.[45]

Xerox argues that at least some of the monetary assessments in Section 36.052(a) are "damages" subject to apportionment under Chapter 33: (1) the amount of any unlawfully procured payment and (2) interest on that amount. Xerox concedes the civil penalty in subsection (a)(3) is not apportionable, but describes the multiple payment measure in subsection (a)(4) as an apportionable form of liquidated damages.

The State maintains that the monetary remedies in Section 36.052(a) are civil penalties, sanctions, fines, or assessments, but not damages and, therefore, not subject to apportionment. Moreover, as the State points out, the TMFPA provides only one way to mitigate liability: through

---

[43] *Id.* § 36.052(a).

[44] *Id.* § 36.052(b).

[45] *Id.* § 36.007.

11

prompt, voluntary disclosure.[46]  The reward for doing so is considerable—liability is capped at *no more than* two times the amount of the unlawfully procured payment, meaning monetary exposure under Section 36.052 could be zero.[47]  The statute thus provides a strong incentive for fraud participants to expeditiously divulge potentially incriminating information and, with this carrot, advances the statute's overarching objective of rooting out fraud in the Medicaid system.  The State argues that the balanced liability provisions the Legislature enacted in Section 36.052 thus conflict irreconcilably with Chapter 33's proportionate-liability scheme.

Before substantively addressing the matters in dispute, we emphasize that the issue here is not whether the claims against Xerox are meritorious, but whether a party found liable for violating the TMFPA may shift the financial burden of Section 36.052's civil remedies to other wrongdoers under the proportionate-responsibility statute.  We hold they cannot.

We agree with the State that Chapter 33 does not apply to a TMFPA action because (1) a TMFPA civil-remedy action is not an "action for recovery of damages" subject to apportionment and (2) the TMFPA's mitigated-fault provision and other financial incentives for informants conflict with Chapter 33.  We therefore need not consider the State's additional arguments regarding Chapter 33's scope and application to the TMFPA.

### C. The Remedies in Section 36.052 Are Not Damages

Medicaid fraud exacts an immense toll from the system, not all of which is discoverable, recoverable, or quantifiable as damages.  The TMFPA therefore imposes harsh administrative and

---

[46] *Id.* § 36.052(c).

[47] *Id.*

12

financial sanctions to punish and, thereby, prevent Medicaid fraud.[48] In addition to what could amount to death-penalty administrative sanctions,[49] the statute authorizes a civil remedy equal to treble the amount of a payment procured by fraud, interest on the fraudulently procured payment, and a hefty variable fine guided by aggravating and mitigating factors.[50] The civil remedy in Section 36.052(a) is undeniably punitive in the aggregate, imposing monetary liability far surpassing the amount of Medicaid funds the State may have actually expended due to an unlawful act.[51] Indeed, "[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers."[52] Xerox urges, however, that the elements of Section 36.052(a)'s civil-remedy formula must be scrutinized individually and Chapter 33 applied to any aspect the Legislature adopted as a "damages" measure so the financial burden on wrongdoers can be alleviated. Viewing the civil remedy in an elemental fashion instead of as a comprehensive remedial scheme skews the statutory analysis, but even if the remedies in Section 36.005(a) are viewed separately, we conclude they are penalties, not damages.

---

[48] *See* TEX. GOV'T CODE § 311.023 (statutory construction includes considering the "object sought to be obtained" and the "circumstances under which the statute was enacted").

[49] TEX. HUM. RES. CODE § 36.005.

[50] *Id.* § 36.052(a), (b).

[51] *Id.*

[52] *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) (concluding Congress did not intend to create a contribution right for antitrust violations that would "soften[] the blow on joint wrongdoers"); *see Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 784 (2000) (describing the civil-penalty and treble-damages remedy in the federal False Claims Act as "essentially punitive in nature").

13

Subject to constitutional constraints on excessive penalties,[53] the Legislature can choose any measure to define a penalty. The question here is not what the Legislature is permitted to do but what it intended. Statutory language is "the surest guide to the Legislature's intent" because "it is a fair assumption that the Legislature tries to say what it means."[54] We thus presume the Legislature selected statutory words, phrases, and expressions deliberately and purposefully and was just as careful in selecting the words, phrases, and expressions that were included or omitted.[55]

Considering the TMFPA's plain language, we begin by observing that the Legislature referred to Section 36.052 as providing a "civil remedy" instead of using the more common statutory term "damages."[56] This legislative choice is particularly telling in light of TMFPA Section 36.006,

---

[53] TEX. CONST. art. 1, § 13 (prohibiting excessive fines); *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex. 1980) ("'Fines' as used in article 1, section 13 [of the Texas Constitution] includes civil penalties."); *see also Mayers v. U.S. Dep't of Health & Human Servs.*, 806 F.2d 995, 997, 999 (11th Cir. 1986) (rejecting constitutional challenge to a fixed civil penalty plus "an assessment" of double the amount claimed "in lieu of damages" under the Social Security Act's analogous Civil Monetary Penalties and Assessment Act).

[54] *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).

[55] *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 438 (Tex. 2016).

[56] *Compare* TEX. HUM. RES. CODE §§ 36.006, .052, *with, e.g.*, TEX. AGRIC. CODE § 17.152(c)(1) (authorizing a civil action to recover "the amount of actual damages" for a statutory violation); TEX. ALCO. BEV. CODE § 102.79(c) ("The prevailing party in any action under . . . this section shall be entitled to actual damages, including the value of the distributor's business . . . ."); TEX. BUS. & COM. CODE §§ 4.401(c) ("If a bank charges against the account of a customer a check before the date stated in the notice of postdating, the bank is liable for damages for the loss resulting from its act."), 5.111(b), (c) (authorizing recovery of "damages resulting from the breach, including incidental but not consequential damages"); 15.21(a)(1) ("suit to recover damages" under the Texas Free Enterprise and Antitrust Act includes "actual damages sustained, interest on actual damages," and "threefold the damages sustained"), 17.47(d) ("The court may make such additional orders or judgments as are necessary to compensate identifiable persons for actual damages or to restore money or property . . . acquired by means of any unlawful act or practice."), 17.50(b)(1) (in a deceptive-trade-practices action, authorizing recovery of "economic damages," "damages for mental anguish," "three times the amount of economic damages," "three times the amount of damages for mental anguish and economic damages"), 17.55 (authorizing a third-party action to recover "the amount of damages or civil penalties assessed"), 52.152(b) (authorizing a civil action for the greater of "actual damages sustained" or $1,000), 57.401(a) ("[A] dealer may bring an action against [a supplier who violates the statute] . . . for damages . . . including damages for lost profits, together with the actual costs of the action . . . ."), 92.201(a) (recovery includes "actual damages" plus "25 percent of the total amount of payments"), 104.003(c) (authorizing an award of "three times the amount of actual damages"),

14

which distinguishes and juxtaposes the Act's civil remedy from the "Damages and Penalties" provision in a previously enacted provision in the same code:

> The application of a civil remedy under this chapter does not preclude the application of another common law, statutory, or regulatory remedy, except that a person may not be liable for a civil remedy under this chapter and civil damages or a penalty under Section 32.039 if the civil remedy and civil damages or penalty are assessed for the same act.[57]

The only self-referential use of the term "damages" occurs in subchapter C of the TMFPA, which governs *qui tam* actions. There, "damages" is used once in delineating the remedies available in a whistleblower action (Section 36.115)[58] and in setting the burden of proof for an action brought under subchapter C (Section 36.1021).[59] But the "damages" references are textually constrained to

301.104 ("A consumer injured by a violation of this chapter may bring an action for the recovery of damages . . . not . . . less than the amount the consumer paid . . . ."), 304.257(b) ("[T]he court may award damages in an amount not to exceed $500 for each violation."), 305.053(b), (c) (authorizing fixed amount for each violation or amount tied to "actual damages," whichever is greater), 321.104 ("A person injured by a violation of this chapter may bring an action to recover actual damages, including lost profits . . . ."), 324.055(f) (greater of "actual damages arising from the violation" or "$100,000 for each zombie used to commit the violation"), 324.101(c), (d) (authorizing fixed amount for each violation or "actual damages," whichever is greater, and linking treble damages to "actual damages" measure), 325.006(b), (c) (same); TEX. CIV. PRAC. & REM. CODE §§ 7.001(c) ("A party may seek actual damages under this section or Chapter 34 . . . but the party may not seek both damages and contempt."), 71.002(a) ("An action for actual damages arising from an injury that causes an individual's death may be brought if liability exists under this section."), 123.004 (authorizing injunctive relief, fixed statutory damages, actual damages in excess of $10,000, punitive damages, and attorney's fees, and costs), 125.070(d) (authorizing state or governmental entity to recover "actual damages," a "civil penalty," and "court costs and attorney's fees"), 134.005(a) (theft victim may recover from the thief "the amount of actual damages" and a variable penalty up to $1,000 or from the parent or party with the duty of control "the amount of actual damages . . . not to exceed $5,000"), 143.002 ("actual damages"); TEX. FAM. CODE § 261.110(d)(1) ("actual damages, including damages for mental anguish"); TEX. FIN. CODE § 341.402(a) ("actual damages caused by the violation" plus capped punitive damages), 349.403 ("actual damages" plus "a penalty"), 392.403(a) (injunctive relief and "actual damages"), 393.503 ("actual damages in an amount not less than the amount the consumer paid" and punitive damages); TEX. OCC. CODE § 702.503 (authorizing court to award "actual damages").

[57] TEX. HUM. RES. CODE § 36.006 (citing *id*. § 32.039).

[58] *Id.* § 36.115(a)(2) (authorizing an award of "not less than two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination").

[59] *Id.* § 36.1021 ("In an action under this subchapter, the state or person bringing the action must establish each element of the action, including damages, by a preponderance of the evidence.").

subchapter C, while Section 36.052 is found in subchapter B. Once again, the juxtaposition of word choice in these adjoining statutory provisions shows the Legislature knows how to say "damages" when it means to authorize an award of damages, yet deliberately chose not to use that term in describing the relief available under Section 36.052.[60]

At the same time, subsection 36.052(a)(3) is expressly described as a "civil penalty," while the other components of the remedy are not. The use or absence of labels may suggest legislative intent, but labels are not dispositive of underlying character.[61] Accordingly, we examine the components of the civil-remedy formula in Section 36.052(a) to ascertain their character, considering them in light of the traditional distinctions between damages and penalties, since neither term is specially defined in the TMFPA or Chapter 33.[62]

"Damages" are "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury."[63] "Damages" compensate for loss—actual or reasonably estimable—and no more.[64] But, not all compensation constitutes "damages," even when an award is necessary to make a party

---

[60] *Cf. State v. Lowry*, 802 S.W.2d 669, 672 (Tex. 1991) (orig. proceeding) ("We cannot interpret the words 'this section' as used in section 15.10 to refer to *another* section of the Act, section 15.12.").

[61] *See Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 432-33 (Tex. 2005) (relabeling statutory damages as "liquidated damages" did not change their underlying character, which was penal in nature and therefore required strict construction).

[62] *See Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) (undefined terms bear their ordinary meaning unless a different meaning is apparent contextually or the plain meaning would produce an absurd result).

[63] BLACK'S LAW DICTIONARY 471 (10th ed. 2014).

[64] *See Battaglia v. Alexander*, 177 S.W.3d 893, 907 (Tex. 2005) (interest is compensatory when it compensates for the lost time value of money, no more and no less); *Phillips v. Phillips*, 820 S.W.2d 785, 788-89 (Tex. 1991) (distinguishing between "liquidated damages," which are a reasonable estimate of actual damages, and a "penalty," which is not reasonably related to an estimate of actual damages); *see also Spackman v. Ralph M. Parsons Co.*, 414 P.2d 918, 921 (Mont. 1966) ("Compensatory damages are designed to compensate the injured party for actual loss or injury—no more, no less.").

16

whole.[65] For example, attorney's fees are generally not damages, even if compensatory.[66] More recently, we reaffirmed in *Wal-Mart Stores, Inc. v. Forte*, that "not all compensatory recovery can be considered damages," and explained that "civil penalties are different from compensatory damages."[67]

A "penalty" is "[p]unishment imposed on a wrongdoer," especially, "a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for an injured party's loss)."[68] Penalties "go beyond compensation" and "are intended to punish, and label defendants wrongdoers."[69] Monetary liability that exists even when no loss has occurred can only be a fine or a penalty, not damages. But that does not mean penalties do not and

---

[65] *In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex. 2015) (orig. proceeding) ("Disgorgement is compensatory in the same sense attorney fees, interest, and costs are, but it is not damages."); *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 173 (Tex. 2013) (orig. proceeding) ("Not every amount, even if compensatory, can be considered damages.").

[66] *In re Nalle Plastics*, 406 S.W.3d at 173 ("While attorney's fees for the prosecution or defense of a claim may be compensatory in that they help make a claimant whole, they are not, and have never been damages."); *see id.* (prejudgment interest and court costs, though compensatory, likewise are not damages for purposes of calculating a supersedeas bond amount); *cf. id.* at 174-75 (attorney's fees that are the subject-matter of the litigation are damages).

[67] 497 S.W.3d 460, 465 (Tex. 2016). In *Forte*, we held that, under Chapter 41 of the Texas Civil Practice and Remedies Code, civil penalties are "exemplary damages" as that term is statutorily defined. *Id.* at 467; *see* TEX. CIV. PRAC. & REM. CODE § 41.001(5) ("'Exemplary damages' means any damages awarded as a penalty or by way of punishment but not for compensatory purposes."). Accordingly, regardless of its nature, the TMFPA's civil remedy would fall within Chapter 41's ambit as "damages" but for an express statutory exemption. TEX. CIV. PRAC. & REM. CODE § 41.002(a), (d)(3) (Chapter 41 applies "to any action in which a claimant seeks damages," but not a TMFPA action). Even if it would be appropriate to casually engraft special definitions from one statute onto another, which is doubtful, exemplary damages are expressly excluded from Chapter 33 apportionment. *Id.* § 33.002(c)(2). Thus, the Legislature's choice to define civil penalties as exemplary damages for purposes of Chapter 41 while excluding TMFPA actions from the statute's application lends nothing of import to the analytical inquiry here.

[68] BLACK'S LAW DICTIONARY 1313 (10th ed. 2014).

[69] *Gabelli v. SEC*, 568 U.S. 442, 451-52 (2013); *see Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 432-33 (Tex. 2005) (flat fine that bears no relationship to actual harm was penal in nature though labeled as "liquidated damages"); *Pace v. State*, 650 S.W.2d 64, 65 (Tex. 1983) ("Punitive damages are not to restore one to his position before the act giving rise to the damages, rather they are to punish the wrongdoer and are an example to others.").

cannot have "compensatory traits."[70] Indeed, the Legislature may choose a penalty regime precisely because harm ensuing from a wrong may be inestimable and, therefore, must be deterred and prevented. Moreover, penalties necessarily compensate in the sense that the hallmark of a penalty is that it goes *beyond* compensating for a loss.

While Xerox mostly hangs its hat on the nature of subsection (a)(1) [the amount of the unlawfully procured payment or benefit], it also argues that subsections (a)(2) [interest on the payment or benefit amount] and (a)(4) [multiplier of the payment or amount] are compensatory rather than sanctions for wrongful conduct. If monetary liability under (a)(1) were reduced by application of Chapter 33, interest on the corpus under (a)(2) and multiples of the corpus under (a)(4) would be derivatively reduced either in the same proportion or post-interest and trebling (a matter we need not decide here). Accordingly, the nature of the interest and multiplier provisions is analytically material only if either constitutes damages on its own or if either could not be imposed on anything other than damages.

---

[70] *See Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119, 130-32 (2003) (describing the treble actual damages provision in the federal False Claims Act as "essentially punitive" but acknowledging that "compensatory traits" nevertheless exist and may be necessary for full recovery); *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784-85 (2000) (observing double actual damages may be compensatory but treble actual damages is "essentially punitive," and as a result, states and state agencies are immune from liability for them under the Eleventh Amendment).

Interest is generally compensatory, but not necessarily,[71] and sometimes damages, but not always.[72] Prejudgment interest typically cannot be imposed on a future-damages award, but the Legislature can provide differently by statute.[73] Prejudgment interest usually cannot be awarded on noncompensatory damages like penalties and punitive damages,[74] but we have acknowledged that the Legislature could provide a different rule, such as by exempting a statute from the constraints

---

[71] *Compare Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 551-52 (Tex. 1985) ("The term 'interest' encompasses two distinct forms of compensation: interest as interest (*eo nomine*) and interest as damages. Interest as interest is compensation allowed by law or fixed by the parties for the use or detention of money. Interest as damages is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." (citation omitted)), *and* TEX. FIN. CODE § 301.002(a)(4) ("'Interest' means compensation for the use, forbearance, or detention of money."), *with Ellis Cty. State Bank v. Keever*, 888 S.W.2d 790, 797-98 (Tex. 1994) (allowing that interest may be awarded on punitive damages, though not otherwise permitted by law, where interest is authorized by a law exempted from Chapter 41 of the Texas Civil Practice and Remedies Code); *see also C&H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 327 (Tex. 1994) (prejudgment interest serves other goals besides fully compensating the plaintiff, such as expediting settlements and trials).

[72] *Compare Cavnar*, 696 S.W.2d at 551-53 (observing two types of interests exist—interest as interest and interest as damages—but noting "prejudgment interest is recoverable regardless of whether it is characterized as damages or as interest"), *Vickery v. Vickery*, 999 S.W.2d 342, 374 (Tex. 1999) ("The term 'interest' encompasses two distinct forms of compensation; interest as interest and interest as damages."), *and Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 898-900 (Tex. 2000) (health-care-liability statute incorporated common-law definitions and thus included prejudgment interest for personal injury and death cases in "damages" cap because interest in such cases are damages under the common law), *with In re Nalle Plastics Family Ltd. P'Ship*, 406 S.W.3d 168, 173 (Tex. 2013) (orig. proceeding) (observing prejudgment interest is not damages for purposes of the supersedeas bond statute even if it is compensatory); *see also Battaglia v. Alexander*, 177 S.W.3d 893, 913 (Tex. 2005) (Brister, J., concurring and dissenting) ("[O]ur cases on interest are all over the map."); *C&H Nationwide*, 903 S.W.2d at 329 (Hecht, J., concurring and dissenting) ("While 'interest' may sometimes be considered 'damages' and sometimes as purely 'interest[,]' in both contexts, 'interest' serves to compensate for the loss of use of money.").

[73] *Compare Cavnar*, 696 S.W.2d at 554-55 ("[A] plaintiff is not entitled to recover prejudgment interest on damages until those damages have actually been sustained," because "[u]ntil that time, the plaintiff has not lost the use of the money he ultimately receives from the defendant"), *and* TEX. FIN. CODE § 304.1045 ("Prejudgment interest may not be assessed or recovered on an award of future damages."), *with C&H Nationwide*, 903 S.W.2d at 324-27 (affirming award of prejudgment interest on future damages as authorized by statute).

[74] TEX. CIV. PRAC. & REM. CODE § 41.007 ("Prejudgment interest may not be assessed or recovered on an award of exemplary damages.").

19

in Chapter 41 of the Texas Civil Practice and Remedies Code,[75] as the Legislature has done with TMFPA actions.[76] In the latter two cases, recoverable "interest" would not actually be compensatory and, despite being labeled "interest," would be a penalty or a fine.[77]

Xerox says the interest provision in subsection (a)(2) must be interest on damages because it accrues from the date the payment was made or the benefit received as a result of an unlawful act and runs through the date the amount is recovered. Under the common law and by statute, however, interest as damages begins to accrue on the earlier of 180 days after the date a defendant receives written notice of a claim or the date suit is filed.[78] Interest as interest accrues as allowed by statute or contract.[79] Section 36.052(a)(2) thus diverges from more general principles governing interest as damages and is more akin to interest as interest. An award of interest under subsection (a)(2) thus

---

[75] *Compare Cavnar*, 696 S.W.2d at 555-56 (at common law, prejudgment interest may not be awarded on punitive damages), *and* TEX. CIV. PRAC. & REM. CODE § 41.007 ("Prejudgment interest may not be assessed or recovered on an award of exemplary damages."), *with Keever*, 888 S.W.2d at 797-98 (holding Chapter 41 applied to statute at issue, and therefore barred prejudgment interest on punitive damages, but acknowledging that the Legislature could enlarge the imposition of prejudgment interest in statutes not governed by Chapter 41).

[76] TEX. CIV. PRAC. & REM. CODE § 41.002(d)(3).

[77] *See Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 432-33 (Tex. 2005) (label is not determinative; nature controls); *Battaglia*, 177 S.W.3d at 907 ("Compensation other than for the lost use of money . . . [is] a windfall . . . or a penalty or fine . . . , but it is not 'interest.'"); *C&H Nationwide*, 903 S.W.2d at 329 (Hecht, J., concurring and dissenting) ("Even if the Legislature were to decide that there should be some compensation awarded for not paying an amount which is not yet due[,] . . . [o]ne might as well call such a surcharge . . . .").

[78] TEX. FIN. CODE § 304.104; *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998) (aligning the common-law accrual rule to the Legislature's approach to prejudgment interest).

[79] *Cavnar*, 696 S.W.2d at 551-52 ("The term 'interest' encompasses . . . interest as interest [which] is compensation allowed by law or fixed by the parties for the use or detention of money."); *cf. Benavidez v. Isles Const. Co.*, 726 S.W.2d 23, 25 (Tex. 1987) (recognizing a distinction in pleading requirements for interest as damages versus statutory or contractual interest).

20

has no significance to the present inquiry independent of the characterization of the principle amount in (a)(1).

As to the multiplier in (a)(4), Xerox does not forcefully press the issue but suggests the payment multiplier is essentially estimated—and in effect liquidated—damages designed to make the government whole for the cost of detecting, investigating, and prosecuting fraud. We reject this characterization. Investigation and litigation costs are separately recoverable under the Act.[80] And even if the (a)(1) single payment measure constitutes compensatory damages, as Xerox argues, treble damages under fraud-deterrent statutes like the TMFPA are "essentially punitive" even if they have "compensatory traits."[81] In a different context, we held in *Phillips v. Phillips* that a contract provision requiring payment of a multiple of actual damages was an unenforceable penalty on its face, rather than "liquidated damages."[82] Liquidated damages constitute a penalty unless (1) the harm caused by the breach is incapable or difficult of estimation and (2) the amount of liquidated

---

[80] TEX. HUM. RES. CODE § 36.007.

[81] *See Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119, 130-32 (2003); *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784-85 (2000); *accord Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401, 405-06 (2003) (acknowledging U.S. Supreme Court cases have "placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards," and noting, for example, the federal False Claims Act is "essentially punitive" while the Clayton Act "is in essence a remedial provision" (internal quotation marks omitted)); *cf. PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 89 (Tex. 2004) (observing "treble damages under the DTPA are punitive damages" (internal quotation marks omitted); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 9 (Tex. 1991) (finding it "self-evident that the treble damages provision of Article 21.21, § 16 is punitive in nature and designed to deter violations of the Insurance Code"); *McKinley v. Drozd*, 685 S.W.2d 7, 9 (Tex. 1985) (observing DTPA treble damages are punitive and triggered only for certain states of culpability); *Pace v. State*, 650 S.W.2d 64, 65 (Tex. 1983) (stating "treble damages" are punitive because they are awarded "not to restore one to his position before the act giving rise to the damages" but instead "to punish the wrongdoer and [as] an example to others").

[82] 820 S.W.2d 785, 786, 789 (Tex. 1991).

21

damages is a reasonable forecast of just compensation.[83]  A multiplier tethered to actual damages

fails on both counts because it (1) assumes actual damages can and will be determined and

(2) instead of attempting to forecast actual damages, it calls for them to be determined and

multiplied.[84]  In short, if treble actual damages is a penalty, then treble a fixed penalty or sanction

amount would also be a penalty.

This brings us to subsection (a)(1), the main focus of the dispute.  Section 36.052(a)(1)

provides, "A person who commits an unlawful act is liable to the state for . . . the amount of any

payment or the value of any monetary or in-kind benefit provided under the Medicaid program,

directly or indirectly, as a result of the unlawful act, including any payment made to a third party."[85]

At first blush, this sounds like damages, but in operation, it is a penalty because it is fixed without

regard to any loss to the Medicaid program and without a direct benefit to the liable party.  A

remedy unrelated to actual loss is a penalty.[86]

The statute does not use the terms "harm," "damages," "overpayment," "loss," "actual

damages," "unauthorized amount," "compensation," or any other words that imply a loss measure

or require the State to prove an actual loss.[87]  Rather, liability is fixed at "the amount of any payment

---

[83] *Id.* at 788.

[84] *Id.* at 789.

[85] TEX. HUM. RES. CODE § 36.052(a)(1).

[86] *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 434 (Tex. 2005).

[87] *Compare* TEX. HUM. RES. CODE § 36.052 *with id.* §§ 22.0251 (overpayment), 32.0321(b) (damages), 32.039 (damages) 32.047 (overpayment), 36.001 (overpayment), 36.115 (damages).

22

or the value of any . . . benefit" that was made or received because of "the unlawful act."[88]  The

causal relationship is between the unlawful act and fact of a payment or receipt of a benefit.  Under

Section 36.002, an "unlawful act" may cause a loss, but not necessarily, and an act may be

"unlawful" only if it does, but not necessarily.

Section 36.002 defines the "unlawful acts" for which liability may be imposed under

Section 36.052.  Some of the acts are not violations at all unless they result in some loss.  For

example:

- "knowingly mak[ing] . . . a false statement or misrepresentation of material fact to permit a person to receive a benefit or payment under the Medicaid program that is *not authorized or that is greater than* the benefit or payment that is authorized";

- "knowingly conceal[ing] or fail[ing] to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is *not authorized or that is greater than* the [authorized] payment or benefit"; and

- "knowingly . . . convert[ing] any part of [a Medicaid] benefit or payment to a use other than for the benefit of the person on whose behalf it was received."[89]

But many other "unlawful acts" can induce a Medicaid program payment without any actual loss

to the program.  Examples include:

- "knowingly mak[ing] . . . a false statement or misrepresentation of material fact concerning . . . conditions or operation of a facility in

---

[88] *Id.* § 36.052(a)(1); *see Burrage v. United States*, 134 S. Ct. 881, 888 (2014) ("Where there is no textual or contextual indication to the contrary, courts regularly read phrases like 'results from' to require but-for causality."); *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 438 (Tex. 2017) ("but for" cause is the minimum concept of cause, without which the event could not have occurred); BLACK'S LAW DICTIONARY 265(10th ed. 2014) (defining "but-for cause").

[89] TEX. HUM. RES. CODE § 36.002(1)-(3) (emphasis added).

23

order that the facility may qualify for certification or recertification required by the Medicaid program";

- "knowingly pay[ing], charg[ing], solicit[ing], accept[ing], or receiv[ing], in addition to an amount paid under the Medicaid Program, a gift, money, a donation, or other consideration as a condition to the provision of a service or a product . . . paid for, in whole or in part, under the Medicaid program";

- "knowingly present[ing] . . . a claim for payment under the Medicaid program for a product provided or a service rendered by a person who . . . is not licensed in the manner claimed";

- knowingly soliciting or receiving "any kickback, bribe, or rebate, in cash or kind . . . for which payment may be made, in whole or in part, under the medical assistance program"; and

- knowingly presenting or causing to be presented "a claim that contains a statement or representation the person knows or should know to be false."[90]

To prove an unlawful act, the State may have to prove a loss occurred, but the civil remedy in Section 36.052(a) is always fixed at the payment amount.

Subsection (a)(1)'s phrasing is important and reasonably indicative of legislative intent to require a forfeiture or disgorgement commensurate with the amount of a fraudulently procured payment or benefit, even a payment made to a third party. Subsection (a)(1) reflects a deliberate shift away from actual loss to the fact of disbursement, obviating the need for the government to prove actual damages unless doing so is required to prove an unlawful act.[91]

---

[90] *Id.* § 36.006(4)-(6), (13) (citing *id.* § 32.039(b)); *id.* § 32.039(b)(1), (b-1).

[91] *Cf. In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex. 2015) (orig. proceeding) ("Disgorgement is compensatory in the same sense attorney fees, interest, and costs are, but it is not damages.").

While some of the unlawful acts defined in Section 36.002 inherently employ a loss measure, our objective is to discern legislative intent from the statute as a whole, not to slice and dice the statute to find some part to which Chapter 33 could theoretically apply. Construing the statute as a whole, we conclude Section 36.052 of the TMFPA employs a penalty scheme and is not an "action for the recovery of damages" to which Chapter 33's proportionate-responsibility mandate applies.[92]

Though the parties make comparisons to analogous federal and state fraud-prevention acts as it suits their arguments—including the federal False Claims Act,[93] the Social Security Act's Civil Monetary Penalties Law,[94] and similar false-claims or Medicaid-fraud statutes enacted by thirty-two state and local jurisdictions[95]—these comparisons are not probative. These statutes, while similar in aim and tactic, employ materially different language, and the language of our statutes controls the

---

[92] Though we conclude Chapter 33 does not apply, we express no opinion regarding whether the factfinder could consider comparative fault in setting the amount of the variable penalty in Section 36.052(a)(3). In determining the amount, which has a swing of no less than $5,500 between the minimum and maximum allowable, the factfinder may consider "the seriousness of the unlawful act committed by the person, including the nature, circumstances, extent, and gravity of the unlawful act." TEX. HUM. RES. CODE § 36.052(b)(2).

[93] 31 U.S.C. §§ 3729-33.

[94] 42 U.S.C. § 1320a-7a.

[95] *See* ALASKA STAT. §§ 09.58.010-.110; ARK. CODE ANN. §§ 20-77-901 to -911; CAL. GOV'T CODE §§ 12650-56; COLO. REV. STAT. §§ 25.5-4-303.5 to -310; CONN. GEN. STAT. §§ 4-274 to -289; DEL. CODE ANN. tit. 6, §§ 1201-11; D.C. CODE §§ 2-381.01 to -381.10; FLA. STAT. §§ 68.081-.92; GA. CODE ANN. §§ 23-3-120 to -127, 49-4-168 to 168.6; HAW. REV. STAT. §§ 661-21 to -31; 740 ILL. COMP. STAT. 175/1-8; IND. CODE §§ 5-11-5.7-1 to -18; IOWA CODE §§ 685.1-.7; LA. STAT. ANN. §§ 46:437.1-440.3; MD. CODE ANN. GEN. PROVIS. §§ 8-101 to -111; MASS. GEN. LAWS ch. 12, §§ 5-5*o*; MICH. COMP. LAWS ANN. §§ 400.601-.615; MINN. STAT. §§ 15C.01-.145; MONT. CODE ANN. §§ 17-8-401 to -416; NEV. REV. STAT. §§ 357.010-.250; N.H. REV. STAT. ANN. §§ 167:58-:62; N.J. STAT. ANN. §§ 2A:32C-1 to -18; N.M. STAT. ANN. §§ 27-14-1 to -15; N.Y. STATE FIN. §§ 187-94; N.C. GEN. STAT. §§ 1-605 to -618; OKLA. STAT. tit. 63, §§ 5053–5053.7; 9 R.I. GEN. LAWS §§ 9-1.1-1 to -9; TENN. CODE ANN. §§ 4-18-101 to -108; 71-5-181 to -185; UTAH CODE ANN. §§ 26-20-1 to -15; VT. STAT. ANN. tit. 32, §§ 630-42; VA. CODE ANN. §§ 8.01-216.1 to -216.19; WASH. REV. CODE §§ 74.66.005-.130.

outcome here.[96]  Importantly, however, federal courts have held wrongdoers may not ameliorate

their punishment under federal law,[97] and Xerox is unable to identify any jurisdiction with a

comparable statute that has held otherwise.  We are satisfied that construing our statutes according

to their plain and ordinary language ultimately leads to alignment with federal and state analogues.

Though the statutory and jurisprudential paths may differ, we end in the same place.  Chapter 33 is

inapplicable because the TMFPA is not "an action to recover damages," but even if it were,

Chapter 33 would not apply to a TMFPA action because the two statutes are in irreconcilable tension

with one another.

### D. Chapter 33 and the TMFPA Conflict

Chapter 33's fault-allocation scheme conflicts with the fraud detection and prevention tools

the Legislature enacted in the TMFPA to induce insiders to divulge information even when they

have unclean hands.  To combat Medicaid fraud, the TMFPA employs a carrot-and-stick approach

designed to root out fraud in the system by rewarding those who report unlawful activities and

---

[96] *See Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507, 516 (Tex. 2012) (holding textual distinctions between parallel state and federal statutes cannot be ignored even when the Legislature intended the statutes to be correlated when possible); *State v. Lowry*, 802 S.W.2d 669, 672 (Tex. 1991) (orig. proceeding) (recognizing that textual variances between state statute and similar federal statute cannot be ignored).

[97] *See, e.g.*, *Mortgs., Inc. v. U.S. Dist. Ct. for the Dist. of Nev.*, 934 F.2d 209, 214 (9th Cir. 1991) ("Because there is no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action, we conclude that there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result."); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 20, 26 (E.D. La. 2007) (collecting cases); *see also Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 315 n.9 (11th Cir. 1991); *United States ex rel. Battiata v. Puchalski*, 906 F. Supp. 2d 451, 460 (D.S.C. 2012); *United States v. Cushman & Wakefield, Inc.*, 275 F. Supp. 2d 763, 773 (N.D. Tex. 2002); *United States v. NHC Health Care Corp.*, No. 00-3128-CV-S-4-ECF, 2000 WL 33146582, at *1 (W.D. Mo. Nov. 15, 2000); *United States v. Nardone*, 782 F. Supp. 996, 999 (M.D. Pa. 1990); *United States v. Hero*, No. 78 Civ. 4587(WCC), 1981 WL 1982, at *3 (S.D.N.Y. 1981); *United States v. Kennedy*, 431 F. Supp. 877, 878 (C.D. Cal. 1977); *United States ex rel. Rodriguez v. Weekly Publ'ns, Inc.*, 74 F. Supp. 763, 769-70 (S.D.N.Y. 1947); *cf. Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981) (no right of contribution or indemnity for liability under a federal statute unless Congress expressly or implicitly creates a right of action or one exists under the federal common law).

severely punishing those who do not. The TMFPA rewards cooperating parties by (1) mandating more lenient treatment under Section 35.052(c) for prompt self-reporting;[98] (2) curtailing potentially costly *qui tam* actions;[99] and (3) allowing wrongdoers to pursue *qui tam* actions and share in *qui tam* recoveries even when they are implicated in the fraud or "planned and initiated the violation."[100]

Unlike the onerous sanctions available under Section 35.052(a), a cooperating party is subject to a penalty capped at "not more than two times the amount of a payment or the value of a benefit" provided under the Medicaid program due to an unlawful act if:

> (1) the person furnished the attorney general with all information known to the person about the unlawful act not later than the 30th day after the date on which the person first obtained the information; and

> (2) at the time the person furnished all the information to the attorney general, the attorney general had not yet begun an investigation under [the TMFPA].[101]

The TMFPA adopts no other fault-mitigation mechanism; reduction or elimination of statutory liability is authorized only through prompt disclosure.

Voluntary disclosure can also curtail a *qui tam* action, and a whistleblower can profit through a *qui tam* action despite culpability in the fraud. The TMFPA's *qui tam* provisions authorize private parties to institute a TMFPA action on the State's behalf in exchange for a share in the recovery and reasonable expenses, attorney's fees, and costs.[102] The statutory bounty varies from ten percent to

---

[98] *Compare* TEX. HUM. RES. CODE § 36.052(a), (b) *with id.* § 36.052(c).

[99] *Id.* § 36.113.

[100] *Id.* § 36.111(a).

[101] *Id.* § 36.052(c).

[102] *Id.* §§ 36.101, .104, .110.

thirty percent of the proceeds, depending on a variety of factors, including whether the State exercises its right to take over the action.[103] A *qui tam* case is barred, however, if the action is based on allegations or transactions already known to the government, except for actions brought by "an original source of the information."[104] An "original source" is an individual who:

> (1) prior to a public disclosure . . . has voluntarily disclosed to the state the information on which allegations or transactions in a claim are based; or

> (2) has knowledge that is independent of and materially adds to the publicly disclosed allegation or transactions and who has voluntarily provided the information to the state before filing a [TMFPA *qui tam* action].[105]

To ferret out information about fraudulent activities, the TMFPA thus coaxes wrongdoers to divulge potentially incriminating information both through penalty avoidance and by allowing an "original source" of information to pursue a TMFPA bounty to the exclusion of other potential relators.

But even more significantly with respect to the inquiry at hand, the TMFPA permits an informer to share in the proceeds of a *qui tam* recovery regardless of whether the person bears some responsibility for violating the Act. The Act also delineates the circumstances under which recovery may or may not be had and provides guidelines for determining a culpable relator's share of recovery. In doing so, the TMFPA encourages insiders who might otherwise fear being implicated in the fraud to pursue *qui tam* actions in the public's interest. *Qui tam* provisions that allow

---

[103] *Id.* § 36.110.

[104] *Id.* § 36.113.

[105] *Id.*

wrongdoers to be rewarded are "based upon the idea of 'setting a rogue to catch a rogue,'"[106] which is said to be "'the safest and most expeditious way . . . ever discovered of bringing rogues to justice.'"[107]

In Section 36.111, the Legislature specifically addresses how a *qui tam* relator's culpability factors into the *qui tam* recovery analysis. As distinguished from Chapter 33, fault is merely one aspect of the *qui tam* recovery analysis, along with other policy considerations, the balancing of which is committed to the trial court's discretion. As to a relator "who planned and initiated the violation of Section 36.002 on which the action was brought," the court has discretion to "reduce the share of the proceeds of the action the person would otherwise receive . . . , taking into account the person's role in advancing the case to litigation and any relevant circumstances pertaining to the violation."[108] No recovery is permitted, however, if the *qui tam* relator has been convicted of a crime "arising from the person's role in the violation of Section 36.002," without regard to the criminal actor's proportionate fault.[109] The only two statutory bases for reducing *qui tam* awards are for relators who "planned and initiated" the fraud and relators "convicted of criminal conduct" arising from the violation. Other than these provisions, culpability is not factored into the *qui tam* recovery

---

[106] *See Mortgs., Inc. v. U.S. Dist. Ct. for Dist. of Nev.*, 934 F.2d 209, 213 (9th Cir. 1991).

[107] *ACLU v. Holder*, 673 F.3d 245, 259 (4th Cir. 2011) (discussing the *qui tam* provisions in the federal False Claims Act and quoting the bill's original sponsor).

[108] TEX. HUM. RES. CODE § 36.111(a).

[109] *Id.* § 36.111(b).

analysis, meaning a culpable *qui tam* relator would be "entitled" to recover at least the minimum

share available to one bearing no responsibility.[110]

Chapter 33 is facially repugnant to the TMFPA's fault-allocation scheme and cannot be

harmonized by applying the court-determined bounty to the "proceeds of the action" *net* of any

comparative-fault offset. Netting is neither textually supportable nor consistent with the objective

of the *qui tam* provisions. The TMFPA contemplates a gross "proceeds of the action" calculation

by explicitly including settlement proceeds,[111] whereas under Chapter 33, settlement proceeds must

be deducted from the recovery.[112] Moreover, offsetting based on comparative fault runs counter to

the statute's clear aim by deterring those most likely to possess information about fraudulent activity

from pursuing a *qui tam* action on the government's behalf:

> We may assume that some informers would get their information of the fraud . . . by being implicated in the perpetration of the fraud. Fear of a counterclaim, based on the charge that the informer himself was solely involved and that the defendants relied upon his judgment and integrity, would in the average case discourage the institution of qui tam actions. The reason Congress gave a genuine informer a share in the recovery was to encourage qui tam actions in the interest of the government.[113]

The TMFPA's strong public policy of encouraging insiders and whistleblowers to come forward

cannot be squared with the powerful disincentive that would ensue if a contribution counterclaim

---

[110] *Id.* § 36.110 (providing a range of minimum and maximum bounties based on non-fault-based factors).

[111] *Id.* § 36.110(d).

[112] TEX. CIV. PRAC. & REM. CODE § 33.012(b).

[113] *United States ex rel. Rodriquez v. Weekly Publ'ns, Inc.*, 74 F. Supp. 763, 769 (S.D.N.Y. 1947).

were permitted.[114] In the latter scenario, *qui tam* relators would be transformed from bounty hunters to judgment debtors, with every incentive to hide information instead of disclosing it. Allowing a *qui tam* defendant to shift its costs under Chapter 33 would thus circumvent, undercut, and directly contradict the TMFPA's more specific mitigation and fault-allocation mechanisms.

What's more, allowing such cost shifting would impede the State from accessing federal financial incentives, which would be contrary to legislative efforts to amend the TMFPA for the purpose of satisfying the additional-funding requirements. In the federal Deficit Reduction Act of 2005 (DRA), Congress implemented financial incentives for states to enact false claims laws targeting Medicaid fraud.[115] In accordance with the DRA, states with *qui tam* laws meeting specified federal standards can retain an additional ten percent of Medicaid recoveries.[116] The monetary inducement requires state laws to be "*at least as* effective in rewarding and facilitating qui tam actions for false or fraudulent claims as those [in the federal False Claims Act]."[117] Under the False Claims Act, defendants cannot ameliorate their liability through contribution and indemnity actions.[118] As a result, if a *qui tam* relator's recovery could be reduced under Chapter 33, the

---

[114] In addition to limiting penalties and authorizing a share in the proceeds of the action, the TMFPA protects whistleblowers from retaliation. *See* TEX. HUM. RES. CODE § 36.115.

[115] Deficit Reduction Act of 2005, Pub. L. 109-171, tit. VI, ch. 3, § 6031(a), 120 Stat. 4, 72 (codified at 42 U.S.C. § 1396h).

[116] 42 U.S.C. § 1396h(a).

[117] *Id.* § 1396h(b)(2) (emphasis added).

[118] *See* note 97, supra.

TMFPA would be less effective in rewarding and facilitating *qui tam* actions.  The Legislature did not intend such a result.

Indeed, after initially failing to qualify for the federal financial incentive,[119] and after falling out of compliance by virtue of the False Claims Act's amendment,[120] the Legislature has, more than once, amended the TMFPA to eliminate barriers to obtaining an increased share of Medicaid recoveries.[121]  Due to these legislative efforts, the TMFPA currently meets the requirements to receive an increased share of the civil penalties authorized under the federal False Claims Act.[122]

In light of the foregoing, it is reasonable to conclude the Legislature did not intend to allow fraudsters to mitigate their TMFPA liability other than on the terms set forth in the Act.  Applying Chapter 33 would undermine the carefully crafted monetary incentives the Legislature adopted to uncover fraud in the Texas Medicaid system.  Moreover, allowing wrongdoers to ameliorate their

---

[119] *See* Letter from Daniel R. Levinson, Inspector Gen., Office of Inspector Gen., Dep't of Health & Human Servs., to Patrick O'Connell, Ass't Att'y Gen., Chief, Civil Medicaid Fraud Section, State of Tex. (Dec. 21, 2006) (determining, for a host of reasons including an unstated burden of proof in a *qui tam* action, that "the Texas Medicaid Fraud Prevention Act does not meet the [DRA's] requirements").

[120] *See* Letter from Daniel R. Levinson, Inspector Gen., Office of Inspector Gen., Dep't of Health & Human Servs., to Greg Abbott, Office of the Att'y Gen., State of Tex. (Aug. 31, 2011), https://oig.hhs.gov/fraud/docs/falseclaimsact/texas-supplement.pdf (determining that after the FCA adopted a three-year statute of limitations, "the Texas False Claims Act no longer meets the [financial incentive] requirements").

[121] *See*, *e.g.*, Act of June 14, 2013, 83rd Leg., R.S., ch. 572, §§ 5, 2013 Tex. Gen. Laws 1385, 1385 (adopting three-year statute of limitations for whistleblower action); Act of Apr. 25, 2007, 80th Leg., ch. 29, § 2, 2007 Tex. Gen. Laws 27, 28 (adopting a burden-of-proof standard that tracks the FCA's language); *see also* TEX. HUM. RES. CODE § 36.052(a) (expressly linking the variable civil penalty to the minimum and maximum amounts in the federal False Claims Act, 31 U.S.C. § 3729(a)).

[122] Letter from Daniel R. Levinson, Inspector Gen., Office of Inspector Gen., Dep't of Health & Human Servs., to Ken Paxton, Office of the Att'y Gen., State of Tex. (Dec. 28, 2016) https://oig.hhs.gov/fraud/docs/falseclaimsact/Texas.pdf ("[W]e have determined that the Texas Medicaid Fraud Prevention Act continues to meet the requirements . . . with respect to the increase in civil penalties under the Federal False Claims Act.").

liability through a comparative-fault remedy against a *qui tam* relator with unclean hands manifestly conflicts with the TMFPA's more specific treatment of that issue.

We have previously held that when a statute's more-specific fault-allocation scheme conflicts with Chapter 33, as is the case here, we give effect to legislative intent by declining to apply Chapter 33 even without an explicit exemption in the proportionate-responsibility statute.[123] Accordingly, we hold Chapter 33 does not apply to a TMFPA claim for this additional reason.

### III. Conclusion

The Texas Medicaid Fraud Prevention Act is not amenable to the fault-allocation scheme in Chapter 33 of the Texas Civil Practice and Remedies Code. The Act adopts a civil-penalty scheme to deter, punish, and thereby prevent fraud on the Medicaid system. This is not an "action for recovery of damages" subject to apportionment under the proportionate-responsibility statute. Chapter 33 is also incompatible with the unique method the Legislature chose to uncover and combat Medicaid fraud and, therefore, does not apply to actions under the TMFPA. We deny Xerox's petition for writ of mandamus.

_____
Eva M. Guzman
Justice

**Opinion delivered:** June 22, 2018

---

[123] *See Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 110-11 (Tex. 2004) (holding Chapter 33 inapplicable to conversion claims under article 3 of the Uniform Commercial Code, which had its own, more specific, fault-allocation scheme).