# IN THE SUPREME COURT OF TEXAS

═══════════════

NO. 20-0404

═══════════════

IN RE THE TEXAS EDUCATION AGENCY; MIKE MORATH, COMMISSIONER OF
EDUCATION IN HIS OFFICIAL CAPACITY; AND DORIS DELANEY, IN HER OFFICIAL
CAPACITY, RELATORS

═══════════════

ON PETITION FOR WRIT OF MANDAMUS

═══════════════

CHIEF JUSTICE HECHT, dissenting.

After years-long investigations, the Texas Commissioner of Education has found serious, longstanding, and ongoing deficiencies in the quality of education provided by several schools in the Houston Independent School District, as well as violations of law in the District's operations. The Commissioner has proposed measures for improvement, including appointing a conservator for the District and installing a board of managers to oversee its operations. The District sued, contesting the findings and the process used to reach them and challenging the remedial measures as unlawful.

The trial court took just three weeks to temporarily enjoin the Commissioner's remedial measures. By statute and Rule of Appellate Procedure,[1] the Commissioner was entitled to suspend,

---

[1] All references to rules are to the Texas Rules of Appellate Procedure.

or supersede, enforcement of the temporary injunction by appealing it.[2] The trial court could not allow the District to counter-supersede—to reinstate enforcement by posting security.[3] The Court evades these clear statutory and rule-based provisions by holding that the court of appeals could simply reissue the trial court's exact same order as its own. In other words, using one Rule to give the District the very relief another Rule expressly denies, and not calling the effect "counter-supersedeas", even though it is. This not only creates a conflict in the Rules; it directly violates state law. Even if it did not, the delay cannot be justified under the Rules. This case has been on appeal for more than a year, with the wellbeing of school children in limbo. And the end is not in sight.

The result flaunts the Legislature's will. I respectfully dissent.

**I**

For years, several District schools have underperformed academically—which means, translating from bureaucratese to plain English, that students were denied the education promised by state law, dimming their futures and injuring society. In 2016, the Commissioner appointed a conservator for one school campus. While that helped a little, it was not enough. A statutory Special Accreditation Investigation[4] of the District turned up multiple violations of state and federal laws. Not only were schools failing to educate students to acceptable standards, and officials allegedly violating the law, but racial tensions and chaotic outbursts among the District's Board of Trustees, which Houston's Mayor called "destabilizing and unacceptable", were playing

---

[2]  *See* TEX. CIV. PRAC. & REM. CODE § 6.001(a); TEX. R. APP. P. 24.2(a)(3); *In re State Bd. for Educator Cert.*, 452 S.W.3d 802, 804 (Tex. 2014); *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999).

[3]  TEX. GOV'T CODE § 22.004(i); TEX. R. APP. P. 24.2(a)(3).

[4]  *See* TEX. EDUC. CODE § 39.057 (providing for Special Accreditation Investigations).

out in the media too. In November 2019, the Commissioner issued his proposed decision to enlarge the conservator's responsibilities to cover the entire District and to suspend the Board and appoint a board of managers to oversee the District.

While that proposed decision was pending final review by the Commissioner, the District sued on June 27, 2019, to enjoin the Commissioner from taking any of the proposed regulatory actions against it. Defendants[5] immediately removed the case to United States District Court. In December, the federal court issued its final judgment, dismissing the District's federal-law claims and remanding the state-law claims to the state district court. On January 8, the trial court issued a temporary injunction prohibiting the Commissioner "from appointing a board of managers to oversee operations" of the District and "from imposing any sanctions or interventions on [the District] based on [the] Special Accreditation Investigation". The trial court also enjoined the conservator "from acting outside her lawful authority to ensure and oversee district-level support to low-performing campuses and the implementation of the updated targeted improvement plan on those campuses".

The next day the Commissioner appealed.

## II

Rule 24 governs, as its title states, "suspension of enforcement of judgment pending appeal in civil cases"[6]—that is, supersedeas.[7] If the judgment is for money or property, the judgment

---

[5] The District also sued the Texas Education Agency and later added the conservator. I refer to all of them collectively as "the Commissioner".

[6] TEX. R. APP. P. 24.1.

[7] *Id.* R. 24.1(f).

3

debtor must post a bond, deposit, or other security in an amount determined by the trial court.[8] If the judgment is for something other than money or property, the trial court still sets the amount and type of security the judgment debtor must post to "adequately protect the judgment creditor against loss or damage that the appeal might cause."[9] But Rule 24.2(a)(3) provides that even if that security is posted, a trial court has discretion to deny supersedeas if the judgment creditor counter-supersedes—that is, posts security against any loss to the judgment debtor if he wins on appeal.[10]

Section 6.001 of the Texas Civil Practice and Remedies Code exempts certain governmental entities and officers from filing a bond for an appeal in a civil case.[11] Such an entity's notice of appeal automatically supersedes a judgment against it.[12] But does a trial court have discretion under Rule 24.2(a)(3) to deny the governmental entity supersedeas, as it would a private entity, if the judgment creditor counter-supersedes? In *In re State Board for Educator Certification* we answered yes.[13] The Legislature promptly countermanded our decision as it applied to three of

---

[8] *Id.* R. 24.1(a), 24.2(a)–(b).

[9] *Id.* R. 24.2(a)(3).

[10] *Id.*

[11] TEX. CIV. PRAC. & REM. CODE § 6.001. The statute exempts from bond:

(1) this state; (2) a department of this state; (3) the head of a department of this state; (4) a county of this state; (5) the Federal Housing Administration; (6) the Federal National Mortgage Association; (7) the Government National Mortgage Association; (8) the Veterans' Administration; (9) the administrator of veterans affairs; (10) any national mortgage savings and loan insurance corporation created by an act of congress as a national relief organization that operates on a statewide basis; and (11) the Federal Deposit Insurance Corporation in its capacity as receiver or in its corporate capacity.

*Id.* § 6.001(b).

[12] *In re State Bd. for Educator Cert.*, 452 S.W.3d 802, 804 (Tex. 2014); *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999).

[13] *Educator Cert.*, 452 S.W.3d at 809.

the governmental entities covered by Section 6.001: the State, a department of the State, or a department head. It did so by enacting Section 22.004(i) of the Texas Government Code, which states: "The supreme court shall adopt rules to provide that the right of [those three entities] to supersede a judgment or order on appeal is not subject to being counter-superseded under Rule 24.2(a)(3) . . . or any other rule."[14] The Court complied by adding this sentence to Rule 24.2(a)(3): "When the judgment debtor is the state, a department of this state, or the head of a department of this state, the trial court must permit a judgment to be superseded".[15]

Accordingly, the Commissioner's appeal superseded the temporary injunction. But despite the clear language of Section 22.004(i) and amended Rule 24.2(a)(3), the trial court allowed the District to counter-supersede the suspension. The court found "that the $200.00, previously deposited by Plaintiff with the Travis County District Clerk, constitutes sufficient security, in lieu of bond, for any foreseeable harm or compensable damages that may result from the granting of this Temporary Injunction". The court of appeals granted the Commissioner's motion to vacate the counter-suspension but at the same time "order[ed] that the trial court's temporary injunction remain[] in effect to preserve the parties' rights until the disposition of this appeal."[16] The court relied in part[17] on Rule 29.3, which states: "When an appeal from an interlocutory order is

---

[14] Act of May 24, 2017, 85th Leg., R.S., ch. 868, § 1, 2017 Tex. Gen. Laws 3586 (codified at TEX. GOV'T CODE § 22.004(i)). The statute excepted matters arising from a contested case in an administrative enforcement action. *Id.*

[15] Order Adopting Amendments to Texas Rule of Appellate Procedure 24.2, Misc. Docket No. 18-9061 (Tex. Apr. 12, 2018).

[16] 609 S.W.3d 569, 578 (Tex. App.—Austin 2020) (per curiam).

[17] The court of appeals also asserted inherent power to protect its jurisdiction and the rights of the parties on appeal. *Id.* The Court today does not address those arguments, and neither do I.

perfected, the appellate court may make any temporary orders necessary to preserve the parties' rights until disposition of the appeal and may require appropriate security."[18]

The Commissioner seeks mandamus relief directing the court of appeals to withdraw its reissuance of the temporary injunction. The Court denies relief.

### III

The Court reasons thusly: True, the court of appeals' order "may have the same practical effect" as counter-supersedeas,[19] but it is "a materially different process with materially different inquiries and objectives."[20] For one thing, the court of appeals' order is not labeled "counter-supersedeas", which is a "term[] of art".[21] For another, the court of appeals' order is issued, well, by the court of appeals, while counter-supersedeas is ordered by the trial court. And besides, the court of appeals' order and counter-supersedeas "are neither procedurally nor functionally equivalent" because the trial court and the court of appeals could both enforce a counter-superseded temporary injunction, while only the court of appeals can enforce its order.[22] Also, the court of appeals' order is governed by Rule 29.3, while counter-supersedeas is governed by Rule 24.2(a)(3). "While we cannot ignore the legislative prohibition [in Section 22.004(i)] against counter-supersedeas under 'any other rule,' that phrase cannot be read in isolation."[23] It is

---

[18] TEX. R. APP. P. 29.3.

[19] *Ante* at ___.

[20] *Ante* at ___.

[21] *Ante* at ___.

[22] *Ante* at ___.

[23] *Ante* at ___.

"textually limited".[24] "Construed in connection with the linguistically precedent context, the phrase refers to rules applicable to the supersedeas process."[25] Actually, "[t]he distinction between supersedeas and temporary orders suspending enforcement of a judgment may seem a fine one"[26]—okay, "punctilious",[27] even. But "reading [Section 22.004(i)] exactly as it is written in this case has the salutary effect of a reasonable result".[28] Otherwise,

> a single judge could stymie the state from exercising its lawful powers and from representing the public as it sees fit during the course of an appellate process that might take years to conclude. Such a concern is less acute when a multi-judge panel, subject to mandamus review by this Court, issues temporary relief.[29]

The flaws in the Court's explanations are glaring. The practical effects of counter-supersedeas and Rule 29.3 "unsupersedeas", let's call it, are identical. The court of appeals simply "order[ed] that the trial court's temporary injunction remain[] in effect".[30] The "inquiry and objective" of the two are also identical: to determine and alleviate the effects of appellate delay. The process of making that determination is essentially the same whether conducted in the trial court or in the court of appeals, as it was here. Each court issued its order to prevent the District from being, in the court's view, irreparably injured. Enforcement of each order is practically the

---

[24] *Ante* at ___.

[25] *Ante* at ___.

[26] *Ante* at ___.

[27] *Ante* at ___.

[28] *Ante* at ___.

[29] *Ante* at ___.

[30] 609 S.W.3d 569, 578 (Tex. App.—Austin 2020) (per curiam).

same in either court. The distinction between counter-supersedeas and unsupersedeas is not merely "fine" or even "punctilious"; it is nonexistent.

The Court says it must read Section 22.004(i) exactly as written, but "any other rule", exactly as written, does not mean "any other *counter-supersedeas* rule". A phrase cannot be read exactly as written by changing it. The Court explains that it must add a word here because the phrase "any other rule" is "textually limited". Giving meaning to a statute based on its textually limited language channels the Court's recent decision in *In re Xerox Corp.*[31] There we used a similar phrase, "textually constrained", to mean that the Legislature used a word in one statutory subchapter but not in another.[32] The Court uses its canon today to mean that "any other rule" must be "[c]onstrued in connection with the linguistically precedent context".[33] If that means text must always be read in context, then of course. But what the Court means is that because "any other rule" is used in a statute about counter-supersedeas, it is limited to any other *counter-supersedeas* rule. Even if that interpretation of the statute were reasonable, and it is not, it makes the statute nonsensical because *there is no other counter-supersedeas rule*. By reading an additional word into "any other rule", the Court reads the entire phrase out of the statute. It refers to nothing. Section 22.004(i) has exactly the same effect under the Court's reading, with or without "any other rule". Lacking the Court's expertise in the Rules but intending to ensure that its statute completely

---

[31] 555 S.W.3d 518, 528–529 (Tex. 2018).

[32] *Id.* ("But the 'damages' references are textually constrained to subchapter C, while Section 36.052 is found in subchapter B.").

[33] *Ante* at ___.

achieved its goal, the Legislature directed its mandate to a specific Rule and then to "any other rule". The Court's interpretation flaunts that intent.

While not a mainstay canon for interpreting statutes, recent legal literature has described courts' finding language textually constrained or limited as the "new purposivism" theory of statutory construction, or what one writer has labeled "backdoor purposivism".[34] The point of this new theory is that meaning is not dictated by text. Instead, courts merely consider text as perhaps helpful, though nonbinding, while still deciding the case on purposivist grounds.[35] The Court's description of Section 22.004(i)'s "any other rule" language as "textually limited" is consistent with new purposivism.

The Court concludes that its reading of Section 22.004(i) "has the salutary effect" of putting the decision whether to "stymie the state from exercising lawful powers and from representing the public as it sees fit during the course of an appellate process that might take years to conclude" in three pairs of judicial hands on the court of appeals under Rule 29.3 rather than one on the trial court under Rule 24(a)(3).[36] But Rule 29.3 applies only, by its terms, "[w]hen an appeal from an *interlocutory* order is" pending.[37] When the appeal is from a final judgment, Rule 25.1(h) provides

---

[34] Anita S. Krishnakumar, *Backdoor Purposivism*, 69 DUKE L.J. 1275, 1278 (2020).

[35] *Id.* at 1278 (arguing that while justices may pay "significant attention to statutory text", they do so merely to *supplement*, rather than supplant, a traditional purposivist analysis); *see also* John F. Manning, *The New Purposivism*, 2011 SUP. CT. REV. 113, 115–116 (discussing courts' role in discerning an "implemental purpose" from a legislature's word choices); Jonathan T. Molot, *The Rise and Fall of Textualism*, 106 COLUM. L. REV. 1, 3 (2006) ("[W]hen one considers how modern textualists go about identifying textual meaning and how purposivists go about identifying statutory purposes, the differences between textualism and purposivism begin to fade. . . . [T]extualists themselves will consider a statute's context as well as its text."); Michael C. Mikulic, Note, *The Emergence of Contextually Constrained Purposivism*, 91 NOTRE DAME L. REV. ONLINE 128, 128 (2016) ("After years of the [Federal Supreme] Court's drift towards new textualism, *King v. Burwell* reaffirms that purposivism still has relevancy; contextually constrained purposivism is the new trend." (citing 576 U.S. 473 (2015))).

[36] *Ante* at ___.

[37] TEX. R. APP. P. 29.3 (emphasis added).

that "[e]nforcement of the judgment may proceed unless . . . the appellant is entitled to supersede the judgment without security by filing a notice of appeal."[38] As already discussed, that exception applies to the governmental entities listed in Section 6.001. And Rule 24.2(a)(3) precludes counter-supersedeas. So the Court's "salutary effect" applies only in interlocutory appeals, not final appeals, which casts doubt on the Court's hypothesized three-judges-instead-of-one rationale it ascribes to the Legislature.

The Court certainly has the power to refuse to read Section 22.004(i) exactly as written. What it should not do is claim to read text exactly as written and then blatantly do the opposite. And what the Court cannot do is read Section 22.004(i) exactly as written and reach the conclusion it does.

**IV**

The Court denies that it reached a conclusion exactly the opposite of the one it reaches today in another petition for mandamus that, coincidentally, was filed on the very same day as the Commissioner's.[39]

On March 7, 2020, the Texas Democratic Party and others sued for a declaration that fear of contracting COVID-19 was reason enough to apply for a mail-in ballot and injunctive relief to compel election officials to count those mail-in ballots.[40] On April 17, after a hearing, the trial court issued a temporary injunction that enjoined the State from taking any actions preventing

---

[38] *Id.* R. 25.1(h).

[39] *Ante* at ___.

[40] *In re State*, 602 S.W.3d 549, 551–552 (Tex. 2020) (orig. proceeding).

counties from accepting and tabulating such ballots.[41] The State immediately appealed, superseding the temporary injunction. The appellees moved for an order under Rule 29.3 for the court of appeals to reinstate the temporary injunction.[42] On May 14, a divided court of appeals granted the motion, citing as indistinguishable and binding the court of appeals' order in the present case that had issued 20 days earlier.[43] Dissenting Chief Justice Frost argued that the relief sought under Rule 29.3 "conflicts with the Legislature's determination that the State automatically supersedes an order or judgment by filing a notice of appeal and that courts cannot countermand the State's ability to supersede".[44]

The next day, the State petitioned this Court for mandamus relief and moved to stay the court of appeals' order. The State made exactly the same argument the Commissioner does here, which is hardly surprising since the Solicitor General filed both petitions, on the same day, from indistinguishable orders. After reviewing the response of the real parties in interest, we granted the State's motion a few hours after it was filed.[45]

On May 13, the day before the court of appeals issued its Rule 29.3 order, the State petitioned this Court for mandamus relief prohibiting various election officials from misinforming voters that fear of COVID-19 was sufficient reason to request a mail-in ballot. While the appeal

---

[41] *Id.*

[42] *Id.* at 552.

[43] Temporary Order, *State v. Texas Democratic Party*, No. 14-20-00358-CV, 2020 WL 3022949, at *1 (Tex. App.—Houston [14th Dist.] May 14, 2020).

[44] *Id.* at *2 (Frost, C.J., dissenting).

[45] Stay at 1, *In re State*, 602 S.W.3d 549 (Tex. 2020) (No. 20-0401), https://www.txcourts.gov/media/1447091/supreme-court-orders-pronounced-05-15-2020-special-order-orders-on-cases-granted.pdf.

from the temporary injunction granting contrary relief against the State remained pending in the court of appeals, we conducted oral argument in the State's mandamus proceeding and decided the issue. Our opinion issued in *In re State* on May 20.[46] The court of appeals later dismissed the appeal from the temporary injunction as moot.

Despite the Court's denial, the order, arguments, and authorities in the mandamus before us in connection with *State* were substantively the same as the Commissioner's here.

**V**

Section 22.004(i) and Rule 24.2(a)(3) prohibit the court of appeals from effectively imposing counter-supersedeas under Rule 29.3, but they do not foreclose all relief under that rule.

The court here could unquestionably have expedited proceedings. The mail-in voting issue in *State* was critical to the election process. This Court finally decided the issue, after merits briefing and oral argument, seventy-four days after it was first raised in the trial court, five days after the petition was filed here, and more than five months before voting started. We stayed the court of appeals' Rule 29.3 order after considering the opponents' response, about six hours after the motion was filed. By contrast, the present case was filed more than twenty months ago. Not quite six of those months were in the court of appeals, with only three weeks in the trial court. Every day this case pends affects the lives and futures of thousands of public-school children.

The Court faults the Commissioner for not moving for expedited consideration.[47] But a court of appeals that undertakes to effectively counter-supersede a temporary injunction against a state official in the face of stated legislative policy to the contrary—or in the Court's words, to

---

[46]  602 S.W.3d 549 (Tex. 2020).

[47]  *Ante* at ___.

"stymie the state from exercising its lawful powers and from representing the public as it sees fit during the course of an appellate process that might take years to conclude"[48]—ought to expedite its decision without being asked. No motion to expedite was filed in *State*.

A court of appeals can certainly consider other interim actions. It could issue stays for specific reasons and limited times. Or it could require that parties notify each other before certain actions are taken. But it cannot grant statutorily prohibited relief by renaming it.

*    *    *    *    *

For all these reasons, I respectfully dissent.

_____
Nathan L. Hecht
Chief Justice

**OPINION DELIVERED**: March 19, 2021

---

[48] *Ante* at ___.