**Order issued March 30, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-20-00606-CV

_____

**PORT ARTHUR STEAM ENERGY, L.P., Appellant**

**V.**

**OXBOW CALCINING LLC, Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-18313**

---

### ORDER ON MOTION TO REVIEW SUPERSEDEAS BOND

Pursuant to Texas Rule of Appellate Procedure 24.4, appellant, Port Arthur Steam Energy, L.P. ("PASE"), requests that this Court review and vacate or reverse the trial court's order requiring a $1,207,282.97 bond to supersede execution of an arbitration award that was confirmed by the trial court. PASE also

requests that the bond amount to be set at no more than \$138,574.28. We deny PASE's Motion to Review Supersedeas Order.[1]

## Background

PASE owns a waste heat recovery facility in Port Arthur, Texas. Appellee, Oxbow Calcining LLC ("Oxbow"), owns and operates an adjacent coke-calcining plant in Port Arthur. PASE and Oxbow's predecessor entered into a Heat Exchange Agreement ("HEA"),[2] the alleged breach of which caused the parties to engage in arbitration.

On March 17, 2020, an arbitration panel issued an arbitration award in favor of Oxbow. The arbitration award was confirmed by the trial court in a July 23, 2020 final judgment.[3] The arbitration panel found, among other things, that PASE breached the HEA[4] and that Oxbow had no liability to PASE. The arbitration award ordered PASE to pay the following:

---

[1] PASE filed a combined Motion to Review Supersedeas Order and Emergency Motion to Stay. On January 7, 2021, the Court granted the portion of PASE's motion requesting a stay of the trial court proceedings pending this Court's disposition of the motion to review supersedeas order. We now address the remaining portion of PASE's combined motion.

[2] According to the arbitration award, "Broadly speaking, Oxbow provided waste heat generated by the calcining process to PASE."

[3] The final judgment granted Oxbow's motion to confirm the arbitration award and denied PASE's motion to vacate the arbitration award.

[4] The arbitration panel found that PASE breached the HEA by bringing an action in state court and by failing to fund an escrow account.

2

- $500,000 in escrow plus interest at five percent from August 31, 2019 in the amount of $68.49 per day until March 17, 2020, the date of the arbitration award;

- An annual escrow deposit of $500,000 every August 31, beginning on August 31, 2020, until the balance equals $2,000,000;[5]

- $44,425.00 in American Arbitration Association administrative fees;

- $244,798.57 in compensation and expenses of the arbitrators;

- $138,574.278 in reimbursement to Oxbow for the amount it had deposited with the American Arbitration Association; and

- Interest at the rate of five percent per year post award and post judgment until fully paid.

On April 4, 2020, Oxbow propounded post-judgment discovery on PASE. On August 7, 2020, Oxbow filed a motion to compel PASE's post-judgment discovery responses.

On August 21, 2020, PASE posted a bond of $138,574.28 to suspend enforcement of the trial court's final judgment pending appeal. PASE filed a notice of appeal the next day.[6] On October 14, 2020, Oxbow filed a motion to increase the amount of security, asserting that the bond was insufficient to

---

[5] The escrow payments "relate[] to PASE's ongoing obligation under the HEA and [the arbitration award] to 'expeditious[ly]' dismantle and remove its Steam Production Facility (which adjoins Oxbow's Port Arthur facility)."

[6] PASE states in its motion that it is appealing the arbitration panel's escrow ruling "on multiple grounds."

supersede the judgment of $1,185,345.99.[7]  In its motion, Oxbow asked the trial court to order PASE to post an additional bond of $1,046,771.71.  PASE filed a response, and the motion to increase the amount of security was heard on November 18, 2020.  On November 24, 2020, the trial court signed an Order Increasing Amount of Security to Supersede Judgment (the "supersedeas order"), stating in pertinent part:

> The security [PASE] must post to supersede the [j]udgment is increased by the amount of $1,068,708.69 and the deadline to supersede the [j]udgment with this increased amount shall be March 1, 2021.  The amount of the supersedeas bond shall increase by $500,000.00 on August 31, 2021, and by $500,000.00 on August 31, 2022.

The order also required PASE to respond to certain post-judgment discovery.  On December 31, 2020, PASE filed in this Court its Motion to Review Supersedeas Order.

In its motion, PASE asserts that the $138.574.28 bond it posted was a sufficient bond because (1) Oxbow was not awarded compensatory damages in the trial court's judgment, (2) the security amount bears no relationship to any potential loss Oxbow could incur while PASE's appeal is pending, and (3) ordering the additional security will cause PASE substantial economic harm and hinder its

[7]     Oxbow asserts that the trial court's judgment comprises the $500,000 escrow payment due on August 31, 2019, the $500,000 escrow payment due on August 31, 2020, $13,629.51 in pre-award interest on the $500,000 August 31, 2019 escrow payment, $138,574.28 in arbitration administrative fees and expenses and compensation, and $33,142.40 in post-award and post-judgment interest.

4

ability to pursue its appeal and other litigation with Oxbow. PASE also asserts that it should not have to respond to the requested post-judgment discovery. In response to PASE's motion, Oxbow asserts that (1) the escrow-payment awards are compensatory damages and therefore the trial court's supersedeas order correctly required PASE to pay an additional $1,068,708.69 to supersede the court's judgment, (2) even if the escrow payments are not compensatory damages, requiring security for them is still proper, (3) the supersedeas order is not excessive and does not cause PASE substantial economic harm, and (4) this Court lacks jurisdiction over PASE's appeal of the trial court's post-judgment discovery ruling.

**Standard of Review**

A trial court's ruling on the amount of supersedeas bond is reviewed for an abuse of discretion. *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 510 S.W.3d 92, 94 (Tex. App.—Houston [1st Dist.] 2016, order); *EnviroPower, L.L.C. v. Bear, Stearns & Co., Inc.*, 265 S.W.3d 1, 2 (Tex. App.—Houston [1st Dist.] 2008, order). To survive an abuse-of-discretion challenge, the evidence must be legally and factually sufficient to support the trial court's ruling. *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 840 (Tex. App.—Dallas 2006, no pet.). "The test for whether a trial court abused its discretion is whether the trial court acted arbitrarily or unreasonably in light of all the circumstances of the case." *EnviroPower,* 265 S.W.3d at 2. Upon a finding that the trial court abused its discretion, this Court has

the authority to order the amount of the security increased or decreased, but if increased, it must be an amount not to exceed the lesser of fifty percent of the judgment debtor's net worth or $25,000,000. TEX. CIV. PRAC. & REM. CODE ANN. § 52.006; TEX. R. APP. P. 24.2, 24.4.

## Discussion

Texas Rule of Appellate Procedure 24 governs the suspension of enforcement of a trial court judgment. It states in pertinent part:

(a) *Methods.* Unless the law or these rules provide otherwise, a judgment debtor may supersede the judgment by:

(1) filing with the trial court clerk a written agreement with the judgment creditor for suspending enforcement of the judgment;

(2) filing with the trial court clerk a good and sufficient bond;

(3) making a deposit with the trial court clerk in lieu of a bond; or

(4) providing alternate security ordered by the court.

TEX. R. APP. P. 24.1(a). When the judgment is for money, the amount of the bond or security "must equal the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment." TEX. R. APP. P. 24.2(a)(1); *see also* TEX. CIV. PRAC. & REM. CODE § 52.006(a). When the judgment is for something other than money or a property interest, the trial court determines the amount and type of supersedeas bond that the judgment debtor must post. TEX. R. APP. P. 24.2(a)(3). The purpose of

supersedeas bond is to "preserve[] the status quo of the matters in litigation as they existed before the issuance of the order or judgment from which an appeal is taken." *Smith v. Tex. Farmers Ins. Co.*, 82 S.W.3d 580, 585 (Tex. App.—San Antonio 2002, pet. denied).

## A. Compensatory Damages

During the hearing on Oxbow's motion to increase the amount of security, the trial court determined that the funds to be escrowed are compensatory damages. The Texas Civil Practice and Remedies Code defines "[c]ompensatory damages" as "economic and noneconomic damages." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(8) (internal quotations omitted). "Economic damages" are defined as "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss; the term does not include exemplary damages or noneconomic damages." *Id.* § 41.001(4) (internal quotations omitted). "Noneconomic damages" are defined as "damages awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages." *Id.* § 41.001(12) (internal quotations omitted).

According to PASE, no security is needed for the escrow account it was ordered to fund because those funds do not constitute compensatory damages. PASE asserts that the arbitration panel's award ordering PASE to deposit funds into an escrow account rather than awarding the funds to Oxbow "in any manner, whether as costs, compensatory damages, liquidated damages, penalties, interest, or otherwise," coupled with the fact that Oxbow "never claimed, argued, or much less established that it suffered a loss of approximately $2 million or that the approximately $2 million in escrow funding required by the [j]udgment constitutes compensation to Oxbow for a loss Oxbow actually incurred" negates any possibility that the escrowed funds could be compensatory damages.

PASE relies on the definition of "damages" in *In re Xerox Corp.*, 555 S.W.3d 518 (Tex. 2018) (orig. proceeding). In *In re Xerox Corp.*, the Texas Supreme Court held that the proportionate-responsibility scheme in chapter 33 of the Texas Civil Practice and Remedies Code does not apply to the Texas Medicaid Fraud Prevention Act. 555 S.W.3d at 539. In its analysis, the supreme court compared the definitions of "damages" and "penalty":

> "Damages" are "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." "Damages" compensate for loss—actual or reasonably estimable—and no more. But, not all compensation constitutes "damages," even when an award is necessary to make a party whole. For example, attorney's fees are generally not damages, even if compensatory. More recently, we

8

reaffirmed in *Wal-Mart Stores, Inc. v. Forte*,[8] that "not all compensatory recovery can be considered damages," and explained that "civil penalties are different from compensatory damages."

> A "penalty" is "[p]unishment imposed on a wrongdoer," especially, "a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for an injured party's loss)." Penalties "go beyond compensation" and "are intended to punish, and label defendants wrongdoers." Monetary liability that exists even when no loss has occurred can only be a fine or a penalty, not damages. But that does not mean penalties do not and cannot have "compensatory traits." Indeed, the Legislature may choose a penalty regime precisely because harm ensuing from a wrong may be inestimable and, therefore, must be deterred and prevented. Moreover, penalties necessarily compensate in the sense that the hallmark of a penalty is that it goes *beyond* compensating for a loss.

*Id.* at 529–30 (internal footnotes omitted). PASE asserts that the escrow award cannot be classified as compensatory damages because Oxbow was not awarded the escrow fund as "compensation for a loss."[9]

Oxbow, on the other hand, asserts that the escrow funds are compensatory damages because the payment of the escrow funds was ordered by the arbitration panel. Oxbow relies on the definition of damages from *In re Xerox Corp.* to assert

---

[8]     497 S.W.3d 460 (Tex. 2016).

[9]     During the hearing in the trial court, Oxbow stated that the escrowed funds are liquidated damages. "Liquidated damages constitute a penalty unless (1) the harm caused by the breach is incapable or difficult of estimation and (2) the amount of liquidated damages is a reasonable forecast of just compensation. . . . A remedy unrelated to actual loss is a penalty." *In re Xerox Corp.*, 555 S.W.3d 518, 532–33 (Tex. 2018) (orig. proceeding) (internal footnotes omitted). Oxbow did not re-urge its liquidated damages argument in its response to PASE's motion in this Court.

9

that the escrow funds need not be *paid* to it to constitute damages, given that Oxbow *has a claim to* the maintenance of the escrow funds. *Id.* at 529. Specifically, Oxbow states that the HEA and the arbitration award describe the circumstances under which it has a claim to the escrow funds. The arbitration award says that the HEA "did not prohibit Oxbow from demanding debts due from PASE in cash." And section 8.6(b) of the HEA, which enumerates the requirements for the escrow deposits, states that the funds in the escrow account may only be removed by PASE "upon [Oxbow's] written acknowledgment that PASE has satisfied all of its obligations under [s]ection 8.6(a)" of the HEA. Oxbow asserts that the escrow funds are not, as PASE argues, potential compensation for a future loss but are, rather, compensation for a current loss: PASE's continued failure to remove its equipment as required at the termination of the HEA agreement.[10] According to Oxbow, the escrow award gave it the "benefit of its bargain," the typical measure of damages in a breach-of-contract suit, but that without a sufficient supersedeas bond, it will not have access to the escrowed funds, if necessary. PASE does not dispute the lack-of-access argument. Rather, it says it "does not want to put a million-plus in escrow, and not be able to use it . . . for legal fees or to maintain [its] assets."

---

[10]     PASE acknowledged during the trial court's hearing that it was "leaving all of its equipment[] while the appeal [was] pending." PASE subsequently stated that it "w[ould] not remove its plant assets and equipment[] while the appeal [was] pending."

10

The cases PASE relies on are inapt. *See In re Xerox Corp.*, 555 S.W.3d at 532–33 (liquidated damages are penalty unless harm caused by breach is difficult to estimate and damage amount is "reasonable forecast of just compensation"); *In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex. 2015) (orig. proceeding) (disgorgement, like attorney's fees, is not measure of compensatory damages); *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013) (orig. proceeding) (attorney's fees are not compensatory damages); *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 433–34 (Tex. 2005) (liquidated damages award in relevant Texas Property Code provision was punitive).

The assertion that the escrow payments are compensatory damages is cogent, given that Oxbow has an actual claim to $1,000,000 in escrow payments.

## B.    Economic Harm

PASE asserts that the supersedeas order will cause substantial economic harm, depriving it of money it needs to "manage, protect, and maintain its assets, and to pursue relief in the courts." But, during the hearing on Oxbow's motion to increase the amount of security, PASE stated, and its representative testified, that PASE's assets—especially the value of the equipment in its plant—are significant:

- "You have no idea . . . [of] the magnitude of . . . the dollars that are tied up in this equipment, and assets, and the value. But it, it – it's a lot – way more than any $2 million."

- "[T]oday – if you were just going to rip it all out, or leave something in place and walk away – it, it's worth, you know, over $5 million. And if

11

you netted out the cost of scrapping some things, it's still way over $4 million."

- "[W]e've got evidence that . . . Oxbow was valuing this for a buy-out purpose, at $30 million, a few years ago."

- "[I]t's insured for over $60 million. This is a major plant, with major assets."

- "[I]f we put on [evidence of] the assets, Judge, you will see . . . [w]e're talking about what, what's insured for $60 million. This isn't just some chumpy [sic] little outfit."

- [W]e came up with . . . an overall value. The assets themselves [are worth] a little over $5 million. We have a number for removal and demolition costs – that's $740,715. And so the . . . total net value of the assets, minus the removal and demo costs, was $4,427,559.

And PASE said that Oxbow "is fully protected by the value of PASE's plant assets" but that it has no intention of selling the assets.[11]

"[T]he correct measure of a company's net worth for the purpose of setting a supersedeas bond under section 52.006 of the Texas Civil Practice and Remedies Code and Rule 24 of the Texas Rules of Appellate Procedure is the company's current assets minus current liabilities at the time the bond is set." *EnviroPower*, 265 S.W.3d at 5. Given PASE's statements and testimony about the value of the

---

[11] According to PASE,

> it was [not] appropriate to start selling the[] assets that c[ould] be easily removed, and tak[e] value away from, from th[e] plant, without putting that money in escrow. And PASE d[id] not want to put a million dollars-plus in escrow, and not be able to use it . . . for legal fees, or to maintain these assets.

assets, the trial court did not abuse its discretion when it concluded that PASE can find a source of funds to pay the additional bond amount.

Further, PASE could have requested a hearing to enable the trial court to determine its net worth for establishing the amount of the bond. TEX. R. APP. P. 24.2(c). Although PASE argued that the legislature has recognized a "new balance" between the judgment creditor's right to a sufficient supersedeas bond and the judgment debtor's right to prevent the dissipation of its assets during appeal, PASE did not try to prove its net worth in challenging the requested bond increase. Texas Rule of Appellate Procedure 24.2 requires the trial court to lower the bond to "an amount that will not cause the judgment debtor substantial economic harm if, after notice to all parties and a hearing, the court finds that posting a bond, deposit, or security in the amount required by [the trial court] is likely to cause the judgment debtor substantial economic harm." TEX. R. APP. P. 24.2(b). The rule continues:

> (c)    Determination of Net Worth.
>
> > (1) Judgment Debtor's Affidavit Required; Contents; Prima Facie Evidence. A judgment debtor who provides a bond, deposit, or security . . . in an amount based on the debtor's net worth must simultaneously file with the trial court clerk an affidavit that states the debtor's net worth and states complete, detailed information concerning the debtor's assets and liabilities from which net worth can be ascertained. An affidavit that meets these requirements is prima facie evidence of the debtor's net worth for the purpose of establishing the amount of the bond, deposit, or security required to suspend

enforcement of the judgment. A trial court clerk must receive and file a net-worth affidavit tendered for filing by a judgment debtor.

(2) Contest; Discovery. A judgment creditor may file a contest to the debtor's claimed net worth. The contest need not be sworn. The creditor may conduct reasonable discovery concerning the judgment debtor's net worth.

(3) Hearing; Burden of Proof; Findings; Additional Security. The trial court must hear a judgment creditor's contest of the judgment debtor's claimed net worth promptly after any discovery has been completed. The judgment debtor has the burden of proving net worth. The trial court must issue an order that states the debtor's net worth and states with particularity the factual basis for that determination. If the trial court orders additional or other security to supersede the judgment, the enforcement of the judgment will be suspended for twenty days after the trial court's order. If the judgment debtor does not comply with the order within that period, the judgment may be enforced against the judgment debtor.

TEX. R. APP. P. 24.2(c). PASE did not request a hearing to enable the trial court to determine its net worth for posting bond. Rather, on the day of the hearing, PASE tendered to the court in camera a bank-balance sheet that was filed under seal in this Court.

Even if the hearing on Oxbow's motion to increase the amount of security was intended also to be a hearing to determine PASE's net worth—which was not the case—PASE's filing of a balance sheet as of October 31, 2020 does not satisfy the requirement that it file "complete, detailed information concerning [its] assets and liabilities from which net worth can be ascertained." TEX. R. APP. P.

14

24.2(c)(1). Neither the balance sheet, nor the affidavit of PASE's counsel, which was also filed the day of the hearing, addresses PASE's assets. As the testimony from the hearing shows, PASE's assets include several million dollars' worth of equipment in its Port Arthur plant.

Had there been a net-worth hearing, the trial court would have had to "issue an order that state[d] the debtor's net worth and state[d] with particularity the factual basis for that determination." TEX. R. APP. P. 24.2(c)(3). Given PASE's apparent decision to not request a net-worth hearing, its argument that it cannot afford the increased bond is unavailing.

## C.    Post-Judgment Discovery

PASE also asks this Court for relief from the post-judgment discovery propounded by Oxbow. But PASE waived its objections to most of the discovery requests during the hearing on Oxbow's motion to increase the amount of security. PASE stated that it did not "have any particular problem with . . . answering those questions, because the assets ha[d] been disclosed," but that PASE would not provide information about its bank balance. PASE also said that it was "inclined" to answer the discovery, "except for cash positions and bank accounts." The trial court gave PASE until January 15, 2021 to respond to Oxbow's post-judgment discovery and held that PASE did not need to disclose the amount in its bank accounts. The trial court's order said PASE need not respond to two

15

interrogatories and one request for production that "seek information relating to PASE's bank accounts, bank institutions, and cash balances, except that PASE shall be required to provide information regarding any transfer of money away from its bank accounts or bank institutions between January 1, 2018 and January 15, 2021." Given that PASE agreed during the hearing to answer the other discovery requests, this issue is moot.[12]

## Conclusion

We conclude that the trial court did not abuse its discretion in ordering the bond increased by $1,068,708.69, inclusive of interest, and we deny PASE's Motion to Review Supersedeas Order. The stay previously imposed by this Court's January 7, 2021 order is lifted. We dismiss as moot Oxbow's request for reconsideration of this Court's January 7, 2021 stay order.

---

[12] Oxbow asserts that this Court lacks jurisdiction over PASE's complaints about the post-judgment discovery. At least one appellate court has ruled on a post-judgment discovery motion in similar circumstances. *See Huff Energy Fund, L.P. v. Longview Energy Co.*, 510 S.W.3d 479, 487–88 (Tex. App.—San Antonio 2014, no pet.) (holding trial court, in response to rule 24.4 motion, did not abuse its discretion in ordering post-judgment production of documents for monitoring of trust assets during pendency of appeal). Noting that the court of appeals and the trial court concluded that the post-judgment discovery was reasonable, the Texas Supreme Court held that ordering the discovery was not an abuse of discretion. *In re Longview Energy Co.*, 464 S.W.3d 353, 362 (Tex. 2015) (orig. proceeding).

## PER CURIAM

Panel consists of Justices Countiss, Rivas-Molloy, and Guerra.