**Petition for Writ of Mandamus Conditionally Granted and Opinion filed March 27, 2025.**



In The

# Fifteenth Court of Appeals

## NO. 15-24-00104-CV

### IN RE SANOFI-AVENTIS U.S. LLC

**ORIGINAL PROCEEDING**
**Harrison County, Texas**

## OPINION

Relator Sanofi-Aventis U.S. LLC (Sanofi) has filed a petition for writ of mandamus, complaining that the trial court abused its discretion by refusing to transfer the underlying suit from Harrison County to Travis County. *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52. Real party in interest APBQR, LLC (APBQR) sued Sanofi on behalf of the State of Texas under the Texas Health Care Program Fraud Prevention Act (THFPA). *See* Tex. Human Res. Code §§ 36.001-.132. In its petition, APBQR alleges that certain activities by Sanofi

violate the THFPA and names the State of Texas as an interested party. Specifically, APBQR alleges that Sanofi unlawfully offered remuneration, in the form of free services to Medicaid patients for the purpose of inducing providers to prescribe Sanofi products. Sanofi answered by denying that any of the allegedly unlawful acts occurred in Harrison County and then moved to transfer the case to Travis County under the THFPA's default-venue provision. *See id.* § 36.052(d). After a hearing, the trial court denied Sanofi's motion to transfer venue.

Because we conclude that we have jurisdiction over this original proceeding and that the trial court abused its discretion in denying Sanofi's motion, we conditionally grant mandamus relief.

## STANDARD OF REVIEW

Mandamus relief is available to enforce mandatory venue provisions in civil cases. *In re Lopez*, 372 S.W.3d 174, 176 (Tex. 2012) (orig. proceeding); *see* Tex. Civ. Prac. & Rem. Code § 15.0642 ("A party may apply for a writ of mandamus with an appellate court to enforce the mandatory venue provisions of this chapter."). Ordinarily, a party seeking mandamus relief must establish that (1) the trial court abused its discretion and (2) there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A party seeking to enforce a mandatory venue provision by mandamus, however, is not required to prove it lacks an adequate appellate remedy. *In re Lopez*, 372 S.W.3d at 176–77. Thus, whether a party is entitled to mandamus relief from a trial court's ruling on mandatory venue turns solely on whether the ruling constitutes an abuse of discretion. *In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 117 (Tex. 2006) (orig. proceeding). A trial court abuses its discretion when "it reaches a decision so arbitrary and

2

unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992).

This case also concerns statutory construction issues, which are legal questions reviewed de novo. *In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020) (orig. proceeding). When a statute's language is unambiguous, "we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). Statutes and related provisions shall be construed as a whole, not in isolation. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001).

## DISCUSSION

The THFPA targets fraud in Texas's health care system.[1] Tex. Hum. Res. Code § 36.001(1), (4-a)–(4-c). The Texas health care system's "size and complexity, the limited time and financial resources of governmental regulators, and the increasing sophistication of [health care program] scams make chicanery difficult to uncover." *In re Xerox Corp.*, 555 S.W.3d 518, 525 (2018). To combat this problem, the THFPA grants the Attorney General broad investigative and enforcement powers. *Id.*; Tex. Hum. Res. Code §§ 36.051–.055. The statute also encourages private persons—via *qui tam* provisions—to file lawsuits against individuals or entities that defraud the State by providing substantial monetary

---

[1] Previously known as the "Texas Medicaid Fraud and Prevention Act," the statute was amended in 2023 to include a broader range of state-run health care programs, such as care for children, the elderly, and individuals with disabilities, not just Medicaid. Act of April 3, 2023, 88th Leg., R.S., ch. 273, §§ 1–15, 2023 Tex. Gen. Laws 584–588.

incentives.[2]  Tex. Hum. Res. Code §§ 36.101, .110; *In re Xerox*, 555 S.W.3d at 525 ("The statute . . . deputizes private citizens to pursue a [THFPA] action on the government's behalf.").  As a gatekeeper to the litigation, the State has the option to intervene at multiple points during the *qui tam* suit.  Tex. Hum. Res. Code §§ 36.102(c)–(e), .104(a)–(b), .107(a)–(e), .108(a), .109(a)–(b).  APBQR filed this suit under these *qui tam* provisions, and to this point in the litigation, the State has declined to intervene.

APBQR argues that this Court lacks jurisdiction over this original proceeding because APBQR's suit filed on behalf of the State is not a civil matter brought by or against the State, such that it is within this Court's exclusive jurisdiction.  *See* Tex. Gov't Code § 22.220(d).  Because it is a threshold matter, we will first address APBQR's contention that this Court lacks jurisdiction over this proceeding.

## A.    *Jurisdiction*

This Court's jurisdiction over original proceedings is outlined in Section 22.221(c-1) of the Texas Government Code: "The original jurisdiction of the Court of Appeals for the Fifteenth Court of Appeals District to issue writs is limited to writs arising out of matters over which the court has exclusive intermediate appellate jurisdiction under Section 22.220(d)."  Tex. Gov't Code § 22.221(c-1).  In relevant part, Section 22.220(d) of the Texas Government Code provides that this Court has exclusive jurisdiction over "matters brought by or against the state."  *Id.* § 22.220(d).  APBQR contends that because it, as a private entity, filed the

---

[2]  Black's Law Dictionary defines "qui tam action" as "[a]n action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive."  Qui Tam Action, Black's Law Dictionary (12th ed. 2024).

underlying *qui tam* suit on behalf of the State of Texas and because the State did not intervene in the suit, we lack jurisdiction over this original proceeding. We disagree.

Under the THFPA's *qui tam* provisions, "[a] person may bring a civil action for a violation of Section 36.002 [an unlawful act] for the person and for the state." Tex. Hum. Res. Code § 36.101(a). Moreover, although filed by a private person, "[t]he action shall be brought in the name of the person and of the state." *Id*. The State may then elect to intervene and proceed with the action, dismiss the action, or notify the court that the State declines to take over the action. *Id*. §§ 36.102(c), (d), .104(a)(2). Even if the State declines to intervene, the State may step back into the litigation fray at any time and settle the action with the defendant. *Id*. § 36.107(c) ("The state may settle the action with the defendant notwithstanding the objections of the person bringing the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all circumstances."). Any proceeds derived from the suit go primarily to the State, even if it does not intervene, with a smaller percentage awarded to the private person who filed the suit. *Id.* § 36.110(a-1).[3] Thus, at any point in the THFPA litigation filed initially by a private person, the State may take over the action, and even if it does not, it is still entitled to most of any recovery.

Consistent with these facts and the statute, a private person bringing a *qui tam* action under the THFPA does so on behalf of themselves "and for the state." *Id.* § 36.101(a). The conjunctive "and," coupled with the State's ability to insert itself at any later point in the case and the State's majority share of any recovery,

---

[3] In fact, the State filed a "Statement of Interest" in relation to the venue challenge below, reminding the trial court that the State has a financial interest in the litigation even though it has chosen not to intervene.

suggests a private person acts on behalf of the State and not as an individual litigant in the traditional sense. Essentially, the person and the State are the same for purposes of the claim. Therefore, a private person bringing suit under the THFPA, even when the State declines to intervene, steps into the State's shoes, with the promise of a potential share in any recovery. *See id.* § 36.102(a); Tex. Gov't Code § 22.220(d)(1).

APBQR takes the position that although this Court has jurisdiction over original proceedings in *qui tam* actions in which the State has intervened, it has no jurisdiction over original proceedings in *qui tam* actions in which the State has *not* intervened, even if the subject matter is identical.[4] Under APBQR's construction of the THFPA, this Court's jurisdiction over *qui tam* proceedings could fluctuate depending on the State's action or inaction in intervening, which, theoretically, could change over the course of the litigation. For example, in theory, under APBQR's argument, the State could intervene in a *qui tam* suit, only to withdraw its intervention after one of the parties files a mandamus proceeding in this Court and effectively divest this Court of jurisdiction. We will not construe a statute to lead to such an absurd result. *TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 439.

Constraining our jurisdiction on the grounds APBQR suggests is inconsistent with the statutory language, the reality that *qui tam* suits are filed for both the private person and the State, and the legislative intent that this Court have statewide jurisdiction "for a range of cases that implicate the State's interests." *In re Dallas Cnty.*, 697 S.W.3d 142, 146 (Tex. 2024). For purposes of determining our mandamus jurisdiction, we conclude that a *qui tam* action qualifies as a suit by

---

[4] There are other original proceedings currently pending before this Court involving nearly identical claims, but the real party in interest in those proceedings has not challenged this Court's jurisdiction because the State intervened in the trial court.

the State. Tex. Gov't Code § 22.220(d). Therefore, we have jurisdiction over this original proceeding.

**B.** *Venue*

Having determined that this Court has jurisdiction over this original proceeding, we now decide whether the trial court abused its discretion in failing to transfer venue from Harrison County to Travis County.

The initial choice of venue is left to the plaintiff, who first decides venue by filing an original petition. *Fortenberry v. Great Divide Ins. Co.*, 664 S.W.3d 807, 811 (Tex. 2023). If a defendant challenges the plaintiff's venue choice through a motion, the plaintiff bears the burden to present prima facie proof that venue is maintainable in the county of suit, while the defendant bears the burden to prove venue is maintainable in the county to which the transfer is sought. *Id.*; Tex. R. Civ. P. 87(2)(a).

The trial court is to determine venue questions from the pleadings and affidavits. Tex. Civ. Prac. & Rem. Code § 15.064(a). All facts regarding venue shall be taken as true when properly pleaded, unless specifically denied by the adverse party. Tex. R. Civ. P. 87(3)(a). A plaintiff is not required to "prove the merits of a cause of action, but the existence of a cause of action, when pleaded properly, shall be taken as established as alleged by the pleadings."[5] *Id.* R. 87(2)(b); *see also id.* R. 87(3)(a) ("[N]o party shall ever be required for venue purposes to support by prima facie proof the existence of a cause of action or part

---

[5] An improperly pleaded claim, i.e. one that is not viable on its face, will not support venue in a particular county. *In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 78 (Tex. 2007) (concluding venue not proper in Travis County when plaintiff failed to plead viable negligent activity claim).

thereof, and at the hearing the pleadings of the parties shall be taken as conclusive on the issues of existence of a cause of action.").

Here, APBQR alleges in its petition that Sanofi violated the Texas Anti-Kickback Statute, found in section 32.039(b) of the Texas Human Resources Code and incorporated into the THFPA by section 36.002(13). *See* Tex. Hum. Res. Code § 36.002(13) (providing that person commits "an unlawful act if the person . . . knowingly engages in conduct that constitutes a violation under Section 32.039(b)"). Section 32.039(b) provides that a person violates Texas law if, among other things:

> the person *offers* or pays, directly or indirectly, overtly or covertly any remuneration, . . . in cash or in kind to induce a person to purchase, lease, or order or arrange for or recommend the purchase, lease, or order of, any good, facility, service, or item for which payment may be made, in whole or in part, under the medical assistance program.

Tex. Hum. Res. Code § 32.039(b)(1-e) (emphasis added). Remuneration includes "any kickback, bribe, or rebate." *Id.* According to APBQR's allegations, Sanofi violated section 32.039(b) by "offering remuneration in the form of free nurse services and reimbursement-support services to providers to induce prescriptions of Sanofi drugs." As to nurse services, APBQR alleges that the treatment of chronic disease requires a Medicaid provider's continuous post-diagnosis involvement and the constant monitoring of the patient's reaction to and tolerance for treatment. According to APBQR's petition, "an offer for a pharmaceutical company to provide these pricey services for 'free' is a big benefit." Similarly, as to reimbursement-support services, APBQR alleges that Medicaid providers are normally tasked with obtaining "prior authorization" before prescribing a drug; the prior-authorization process is a time-consuming administrative task, which

providers ordinarily must pay staff or third-party commercial vendors to complete; and "to cause Providers to write prescriptions for its products, Sanofi contracted with [a third party] to offer Support Services to Providers willing to prescribe the Covered Drugs."

The THFPA contains a mandatory venue provision. A lawsuit under the THFPA must be filed either in Travis County or in any county "in which any part of the unlawful act occurred." Tex. Hum. Res. Code § 36.052(d). APBQR filed suit in Harrison County, rather than the default venue of Travis County, allegedly because at least part of Sanofi's unlawful acts occurred in Harrison County. In its motion to transfer venue, Sanofi asserted that none of the services it provides violate the THFPA. In addition, Sanofi specifically denied that any of "the purported 'unlawful acts' alleged in the Petition occurred in Harrison County," "setting aside the question of whether these patient resources somehow amounted to unlawful acts." As a result, the burden shifted from Sanofi to APBQR to produce prima facie proof of venue in admissible form, demonstrating that at least a part of the unlawful acts it alleges Sanofi committed occurred in Harrison County. *See* Tex. R. Civ. Proc. 87(2)(b); *GeoChem Tech. Corp. v. Verseckes*, 962 S.W.2d 541, 543 (Tex. 1998).

In response to Sanofi's motion to transfer venue, APBQR asserted that "it is abundantly clear" that Sanofi has offered at least free nurse services and reimbursement-support services in Harrison County. The sole proof APBQR supplied to support venue in Harrison County was a declaration from Kristen Burgess, a nurse practitioner in Harrison County hired by APBQR's counsel as a consultant for purposes of this litigation. Burgess declared that Sanofi's sales representatives regularly meet with medical providers in Harrison County to promote Sanofi's medications. Her statements about Sanofi representatives

9

visiting providers in Harrison County provide no details of what allegedly occurred at those meetings or how those meetings relate to the allegations in APBQR's pleadings. Burgess's declaration concerning these alleged visits is insufficient to establish venue in Harrison County.

Apparently recognizing this deficiency of proof, APBQR's primary argument in support of the trial court's venue ruling is that Burgess's declaration establishes that she could access Sanofi's website, which contains an application for at least some of the services that APBQR claims are unlawful. Burgess opines that "at the request of counsel," she researched Sanofi's activities and was able to access from her computer in Harrison County Sanofi's website and, on that website, an application for patient services. She also attaches a copy of this online application to her declaration. APBQR reasons that the accessibility of the Sanofi website in Harrison County is enough to support venue in Harrison County (and anywhere else the website is accessible) under the THFPA because the website conveys an "offer," as that term is used in section 32.039(b) of the Texas Human Resources Code. Under this theory of venue, APBQR concedes, as it must, that venue is proper against Sanofi in any of the 254 counties in Texas so long as there is proof of internet access in the county and the ability to access the Sanofi website. We disagree.

To support its theory, APBQR urges us to adopt the plain meaning of the word "offer" and cites the dictionary definition of the term "to offer," which is "to present for consideration" or "to make available."[6] While APBQR is correct that we apply the plain language of an unambiguous statute when determining its

---

[6] *See Offer*, Merrian-Webster.com, https://www.merriam-webster.com/dictionary/offer (last visited Feb. 3, 2025).

meaning and that courts often use common dictionary definitions to do so, we also cannot ignore a statute's context, including the words surrounding the term to be construed. *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 61 (Tex. 2015) (explaining that "the meaning of a word or phrase, especially one in a list, should be known by the words immediately surrounding it"). If a contrary interpretation is apparent from the statute's context, or if a suggested interpretation leads to an absurd result, then we will look beyond the ordinary dictionary definition of a statute's terms. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008).

To determine whether we should construe "offer" in section 32.039(b) by applying the dictionary definition of "offer," we must first review the context in which the term "offer" is used. That is, we look to the context of the statute as a whole to determine whether to accept APBQR's broad dictionary definition of the term "offer" or a narrower, legal definition of that term, given the statute's penal nature. The Texas Supreme Court has instructed that the THFPA is a "penal statute we must construe strictly." *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 721 (Tex. 2024). The party seeking enforcement of the statute must, therefore, demonstrate that the conduct it complains of is "clearly within the terms of the statute," and if uncertain, the THFPA must be read in favor of the defendant and against the enforcement of the law. *Id.* As a result, we look to the statute's context to ensure a narrow construction that limits potential liability—or, in this case, venue—under the statute.

The term "offer" in section 32.039(b) of the Texas Human Resources Code is meant to connote an inducement, directly or indirectly, of certain action by the person receiving the offer. Black's Law Dictionary defines "offer" as to "present something for acceptance" or "promise to do . . . some specified thing in the

future." Offer, Black's Law Dictionary (12th ed. 2024). This legal definition of "offer" is more appropriate here than the common dictionary definition APBQR suggests because the very violation complained of is an "offer" made for the purpose of inducing an action.[7] Given the nature of this suit, alleging unlawful offers of services by Sanofi to Medicaid patients, it is difficult to imagine that the Legislature intended the broad definition APBQR suggests. Instead, the legal meaning of the term "offer" fits the statute's context, such that a person must not only be able to access Sanofi's website in a given county but must also expect to receive something from Sanofi as a result, even if it is simply a promise by Sanofi to do something in the future. APBQR has provided no evidence that anyone in Harrison County received or that Sanofi promised to provide free nurse services or reimbursement-support services in return for accessing Sanofi's website. At most, the patient-services application on Sanofi's website constitutes a general invitation to apply for some of the challenged nurse services, which Sanofi may then either accept or deny based on certain eligibility criteria.

"'We presume that the Legislature chooses a statute's language with care,' and we will not ignore the statute's use of a term that carries a 'particular meaning.'" *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 701 (Tex. 2015) (quoting *TGS–NOPEC Geophysical Co.*, 340 S.W.3d at 439). In the context of the mandatory-venue provision at issue here, the term "offer" means the legal definition of the term. Thus, assuming without deciding that APBQR's claims are otherwise properly pleaded, we conclude that APBQR failed to meet its burden to

---

[7] APBQR's response suggests that it is improper for us to consider a definition beyond Webster's. The Texas Supreme Court, however, regularly uses Black's Law Dictionary to interpret the meaning of statutory terms. *See e.g.*, *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014); *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 519 (Tex. 1998).

present prima facie proof that any of the alleged "offers" that are the basis of its *qui tam* action were made in Harrison County. Consequently, the trial court abused its discretion in refusing to transfer APBQR's suit to Travis County.

APBQR also contends that even if we conclude the trial court abused its discretion on the venue determination, our only remedy is to remand back to the trial court to consider APBQR's request for a continuance so that it may conduct discovery on the venue issue. We disagree.

While it is true that a trial court "may" consider discovery in making a venue determination, Tex. R. Civ. P. 88, it is not required to do so. *See Bridgestone/Firestone, Inc. v. Thirteenth Court of Appeals*, 929 S.W.2d 440, 442 (Tex. 1996) (per curiam) (refusing to grant mandamus relief when party was not diligent in seeking venue discovery or continuance). Here, there is no evidence in the record that APBQR served discovery on Sanofi prior to the venue determination or that APBQR obtained a ruling from the trial court on its continuance motion or discovery request. It proceeded at the venue hearing without re-urging its continuance motion or discovery request and without requesting a ruling. In fact, there are emails in the record between counsel indicating that APBQR's counsel preferred to have the venue issue decided "on the papers" and that APBQR did not "require additional discovery." By proceeding on Sanofi's motion to transfer in this manner and obtaining a ruling on it, while failing to obtain rulings on its continuance motion and discovery request, APBQR has no right to a remand for the trial court to consider these issues. *See Fortenberry*, 664 S.W.3d at 811–12 (explaining that "remand for further proceedings on venue should be quite rare" and "is proper only when there is 'no probative evidence that

venue was proper in either county of suit or in the county to which transfer was sought'" (quoting *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex. 1993)).

## CONCLUSION

For these reasons, we conditionally grant mandamus relief and direct the trial court to vacate its venue order and transfer the case to Travis County. If the court fails to do so promptly, the writ will issue.

/s/ Scott K. Field
Scott K. Field
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.