# Supreme Court of Texas

No. 24-0239

In re Novartis Pharmaceuticals Corporation,

*Relator*

On Petition for Writ of Mandamus

Statement of JUSTICE YOUNG and JUSTICE SULLIVAN respecting the denial of the petition for writ of mandamus.

This case presents weighty issues worthy of our full attention, and perhaps the Court should have set it for oral argument. But the decision to deny the petition is understandable given that there is a new statewide appellate court that has already held that it has jurisdiction over disputes like this one. Awaiting that court's view of the issues presented may assist this Court in its eventual and inevitable consideration of the constitutional concerns surrounding *qui tam* litigation under what is now called the Texas Health Care Program Fraud Prevention Act.

## I

"[T]he Texas Medicaid Fraud Prevention Act," as this statute was once known, "is a powerful tool for targeting fraud against the Texas Medicaid program and securing the program's integrity." *In re Xerox Corp.*, 555 S.W.3d 518, 525 (Tex. 2018) (citing Tex. Hum. Res. Code

§§ 36.001–.132); *see also* Act of May 16, 2023, 88th Leg., R.S., ch. 273, 2023 Tex. Gen. Laws 584 (expanding the statute's coverage to include two additional healthcare programs). "The statute imbues the attorney general with broad investigative and enforcement authority and—via *qui tam* provisions—deputizes private citizens to pursue a[n] action on the government's behalf." *Xerox*, 555 S.W.3d at 525.

Thus, a private "person may bring a civil action for a violation of [the Act] for the person and for the state," seeking payment of civil penalties "in the name of the person and of the state." Tex. Hum. Res. Code § 36.101(a); *see also id.* § 36.052(a) (prescribing civil remedies for which a defendant can be held liable). This so-called *qui tam* relator "shall serve a copy of the petition and a written disclosure of substantially all material evidence and information the person possesses on the attorney general," *id.* § 36.102(a), who must then decide within 180 days whether to take over the action, *id.* § 36.104(a); *id.* § 36.102(c). "If the state declines to take over the action, the person bringing the action may proceed without the state's participation." *Id.* § 36.104(b). Under certain circumstances, the State can intervene in the action after the 180-day deadline has passed. *Id.* § 36.104(b-1).

In this case, Health Selection Group, LLC (HSG) sued Novartis under the Act, alleging that Novartis bilked Texas Medicaid out of hundreds of millions of dollars through fraudulent marketing schemes. The State declined to take over the action. Novartis filed a plea to the jurisdiction and motion to dismiss in which it argued, among other things, that HSG lacked standing. The State asserted a continuing interest in the case and opposed Novartis's motion, which the trial court denied.

The Sixth Court of Appeals denied Novartis's ensuing mandamus petition without analysis. *In re Novartis Pharms. Corp.*, No. 06-24-00005-CV, 2024 WL 874686, at *1 (Tex. App.—Texarkana Mar. 1, 2024).

This Court does the same today, declining to take up a pair of arguments against this *qui tam* action. First, Novartis contends that because its alleged violations of the Act did not injure HSG, HSG lacks standing and the courts lack subject-matter jurisdiction. Second, it argues that the Act's *qui tam* provisions violate the separation of powers established by Article II, § 1 of the Texas Constitution, insofar as the Act allows a private litigant, rather than the attorney general, to represent the State in court. Able counsel for HSG and Novartis have joined issue on these important constitutional questions, as have the solicitor general and several sophisticated amici curiae, but for now they will remain unanswered.

## II

When it denied mandamus relief, the Sixth Court provided no meaningful analysis of Novartis's arguments about standing and separation of powers. *See* 2024 WL 874686, at *1 (recounting the mandamus standard and then announcing the conclusion that mandamus relief is denied). Our Court would surely benefit from thoughtful consideration of these difficult questions by the lower courts.

Analysis of HSG's standing is likely to begin, but probably should not end, with Justice Scalia's opinion for the Court in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000). The *Stevens* Court held that a *qui tam* relator under the federal False Claims Act can have Article III standing as a partial assignee of

3

the government's damages claim, because "the assignee of a claim has standing to assert *the injury in fact* suffered by the assignor." *Id.* at 773 (emphasis added); *accord id.* at 771–74 (reiterating that this holding was conditioned on an "injury in fact," not merely on some violation of law). HSG may find some support in *Stevens*, to whatever extent Texas's standing doctrine "parallels the federal test for Article III standing." *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012); *cf. Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 866–73 (Tex. 2025).

But the False Claims Act, "while similar in aim and tactic, employ[s] materially different language, and the language of [Texas's] statutes controls the outcome." *Xerox*, 555 S.W.3d at 535. The Act under which HSG sued Novartis "employs a penalty scheme and is not an action for the recovery of damages," with money being "exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for an injured party's loss)." *Id.* at 530, 534 (internal quotation marks and citation omitted). How can it be said, given these statutory differences, that the State has some injury in fact (as opposed to an injury in law) that it could assign to a *qui tam* relator like HSG?

Consider a hypothetical law that encouraged people to report traffic violations that caused no injury: An ordinary citizen can sit at an intersection, record videos of vehicles running red lights, bring punitive civil suits, and recover monetary awards. In that scenario, the people caught on video violated Texas law, but the relator suffered no injury. The State suffered an injury in law—the violation of statutes that govern traffic. That is why we can be ticketed for speeding or other legal violations

4

even when there is no concrete harm that results. In this hypothetical, did the State suffer any injury in fact? Even if so, is it the kind that it could assign to a relator? To quote David Byrne: "I'll tell you later." *Stop Making Sense* (Arnold Stiefel Co. 1984).

As for Novartis's separation-of-powers argument, HSG will find less comfort in the United States Reports. Justice Thomas has outlined "substantial arguments that the *qui tam* device is inconsistent with Article II [of the U.S. Constitution] and that private relators may not represent the interests of the United States in litigation." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 449 (2023) (Thomas, J., dissenting); *accord id.* at 442 (Kavanaugh, J., joined by Barrett, J., concurring); *Wis. Bell, Inc. v. United States ex rel. Heath*, 145 S. Ct. 498, 515 (2025) (Kavanaugh, J., joined by Thomas, J., concurring). Of course, Article II of the *Texas* Constitution—a "strong separation-of-powers provision," *see Abbott v. Harris County*, 672 S.W.3d 1, 3 (Tex. 2023) (citing Tex. Const. art. II, § 1)—uses very different language, but that may just generate different constitutional doubts about *qui tam* litigation. *See Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 469 (Tex. 1997) ("[W]e believe it axiomatic that courts should subject private delegations to a more searching scrutiny than their public counterparts."). Then, too, our Constitution assigns the authority to represent the State in court to the attorney general and to county attorneys and district attorneys. *See* Tex. Const. art. IV, § 22; *id.* art. V, § 21. Does this limitation pose a problem for a private *qui tam* relator like HSG? *See, e.g., Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943). Stay tuned!

5

If Texas's *qui tam* statute suffers from either of the constitutional flaws Novartis purports to identify, our legislature needs to know it soon and to hear it from a statewide court. If for no other reason, there are federal financial incentives hanging in the balance. *See Xerox*, 555 S.W.3d at 538–39 & nn.115–22 (explaining that a State "with *qui tam* laws meeting specified federal standards can retain an additional ten percent of Medicaid recoveries" (citing 42 U.S.C. § 1396h)). Whether in this case or in another one like it, the lower courts—and, eventually, this Court—ought to take up this important subject.

### III

Fortunately, the legislature recently created the Fifteenth Court of Appeals, which has "statewide jurisdiction for a range of cases that implicate the State's interests." *In re Dallas County*, 697 S.W.3d 142, 146 (Tex. 2024). The Fifteenth Court came into existence about five months after Novartis filed its mandamus petition in this Court. And the Fifteenth Court has held that it has jurisdiction over mandamus petitions like this one. *See In re Sanofi-Aventis U.S. LLC*, 711 S.W.3d 732, 737–38 (Tex. App.—15th Dist. 2025, orig. proceeding).

In that case, APBQR, LLC sued Sanofi-Aventis U.S. LLC on behalf of the State of Texas under the Act. *Id.* at 735. Sanofi moved to transfer the case to another county under the statute's default-venue provision. *Id.* The trial court denied the motion, and Sanofi filed a mandamus petition in the Fifteenth Court. *Id.*

APBQR argued that the court of appeals lacked jurisdiction. *Id.* at 736. It pointed out that the Fifteenth Court's original mandamus jurisdiction "is limited to writs arising out of matters over which the

6

court has exclusive intermediate appellate jurisdiction." *Id.* (quoting Tex. Gov't Code § 22.221(c-1)). That exclusive appellate jurisdiction includes "matters brought by or against the state." *Id.* (quoting Tex. Gov't Code § 22.220(d)(1)). According to APBQR, because "the State did not intervene in the suit," it was not a matter brought by the State and the court lacked mandamus jurisdiction. *Id.*

The Fifteenth Court rejected that argument. It noted that the suit was "brought in the name of the person and of the state." *Id.* at 737 (quoting Tex. Hum. Res. Code § 36.101(a)). On its reading of the statute, "[e]ven if the State declines to intervene, the State may step back into the litigation fray at any time and settle the action with the defendant." *Id.* (citing Tex. Hum. Res. Code § 36.107(c)). And the State receives most of any proceeds from the suit. *Id.* (citing Tex. Hum. Res. Code § 36.110(a-1)). In the court's view, therefore, "a private person bringing suit under the [Act], even when the State declines to intervene, steps into the State's shoes." *Id.* "Essentially, the person and the State are the same for purposes of the claim." *Id.* Moreover, if APBQR were correct that the Fifteenth Court's jurisdiction turned on whether the State intervened, then the State could "effectively divest [the court] of jurisdiction" by withdrawing its intervention after a party sought mandamus—an "absurd result" the court could not abide. *Id.* Having determined that its jurisdiction was secure, the court conditionally granted mandamus relief. *Id.* at 741.

We express no view here on whether the Fifteenth Court properly exercised mandamus jurisdiction in *Sanofi*. For present purposes, the important thing is that the court's analysis would seemingly allow it to exercise jurisdiction over a mandamus petition like Novartis's. Both

7

cases involve *qui tam* suits (brought under the same Act) in which the State declined to intervene. Under *Sanofi*'s logic, the suit against Novartis is also a "matter[] brought by or against the state." Tex. Gov't Code § 22.220(d)(1).

This means that a statewide court has now declared itself the proper forum to hear the grave challenges to the Act that Novartis raises here. Indeed, the Fifteenth Court indicated in *Sanofi* that other suits involving the Act were already pending before it. *See Sanofi*, 711 S.W.3d at 737 n.4. If the Act really does suffer from the constitutional deficiencies alleged by Novartis, we expect that future litigants will provide the Fifteenth Court with the opportunity to carefully consider them. The Fifteenth Court would greatly assist this Court by presenting its analysis in a written opinion. After the Fifteenth Court has weighed in, this Court will be better positioned to provide an accurate and definitive determination of the Act's constitutionality.

Indeed, at least as a formal matter, we see no reason that Novartis could not file a mandamus petition in the Fifteenth Court raising its challenges to the Act. After all, "this Court's failure to grant a petition for writ of mandamus is not an adjudication of, nor even a comment on, the merits of a case in any respect, including whether mandamus relief was available." *In re AIU Ins. Co.*, 148 S.W.3d 109, 119 (Tex. 2004). "The writ of mandamus is a discretionary writ," *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007), and there are many reasons why a justice may vote to deny a mandamus petition. That is why a party could challenge the trial court's decision to compel arbitration even though two separate courts of appeals and this Court had previously denied his

8

mandamus petitions raising the same issue. *See id.* at 31–32. Lower courts are familiar with this principle. *See, e.g.*, *In re Mason-Gibson, Inc.*, No. 06-21-00120-CV, 2022 WL 452279, at *3 (Tex. App.—Texarkana Feb. 15, 2022, orig. proceeding) (entertaining a mandamus petition even though the relator had previously "filed the same mandamus petition requesting the same relief in the Texas Supreme Court" and this Court had denied relief); *In re Arpin Am. Moving Sys., LLC*, 416 S.W.3d 927, 929–30 (Tex. App.—Dallas 2013, orig. proceeding) (entertaining a mandamus petition even though the court of appeals had "denied an earlier petition for writ of mandamus filed by relator for lack of proper certification under Rule 52.3(j)").

To be sure, parties should not abuse the judicial system by flooding the courts with an endless stream of identical petitions. As a general matter, an *identical* petition should meet the same fate, if only for the sake of judicial economy. But this case's unusual circumstances likely place it in a class of one, or at most of a very few, meaning that allowing Novartis to petition the Fifteenth Court for mandamus would not risk re-urged mandamus in other cases. The legislature decided that a statewide court was needed to hear certain disputes involving state interests. When Novartis filed its petitions in the Sixth Court and in this Court, that new court did not yet exist, but it has now become operational. From now on, if *Sanofi* is correct, all such petitions will go to the Fifteenth Court and any eventual appeal from Novartis's underlying proceeding will end up in that court, too. Given that the Sixth Court did not explain why Novartis's petition lacked merit and this Court did not opine on the merits at all, it might make sense to give the court hearing any eventual

9

appeal an opportunity to assess the Act's constitutionality sooner rather than later, assuming that the other prerequisites of mandamus review are met to that court's satisfaction.

In sum, another challenge to the Act's constitutionality is likely to arise, whether from Novartis or from a future litigant. When it does, we hope that the court of appeals will take the issues seriously enough to dispose of them in a written opinion. And, in an appropriate case, we anticipate this Court settling those issues once and for all.

Evan A. Young
Justice

James P. Sullivan
Justice

**OPINION FILED:** October 24, 2025